922 P.2d 964

**BUDGET RENT–A–CAR SYSTEMS, INC., Plaintiff–Appellant,**

v.

**Constance COFFIN, Defendant and Third–Party Plaintiff–Appellee,**

v.

**Ralph ROUBIQUE, Intervenor/Third–Party Defendant–Appellee.**

No. 19085.

Supreme Court of Hawai'i.

Aug. 30, 1996.

Carleton B. Reid and John T. Hassler of Reid, Richards & Miyagi, on the briefs, Honolulu, for plaintiff-appellant.

Stuart N. Fujioka and Greg Nishioka of Witherwax, Nishioka & Fujioka, on the briefs, Honolulu, for defendant-appellee Coffin.

Henry N. Kitamura and Peter B. Carlisle of Shim, Tam & Chang, on the briefs, Honolulu, for intervenor/third-party defendant-appellee Roubique.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

In this declaratory judgment action, plaintiff-appellant Budget Rent–A–Car Systems, Inc. (Budget) appeals from the Third Circuit Court's order granting summary judgment in favor of defendant and third-party plaintiff-appellee Constance Coffin. On appeal, Budget argues that the circuit court erred in granting summary judgment in favor of Coffin based on its conclusion that a use limitation provision in Budget's car rental contract with Coffin, prohibiting the use of its rental vehicle on, *inter alia*, Saddle Road on the island of Hawai'i [hereinafter use limitation provision], was void as being against public policy. For the following reasons, we vacate the circuit court's order granting summary judgment in favor of Coffin and remand for the entry of an order granting summary judgment in favor of Budget.

## I. BACKGROUND

The facts on appeal are undisputed. The circuit court made the following findings of fact:

1. There are no questions of material fact.

2. On November 19, 1992, Defendant Constance Coffin rented from Budget Rent A Car Systems Inc. a 1992 Ford Mustang with Hawaii's License Plate No. ERU 777 [hereinafter the rental vehicle].

3. The Rental Contract signed by Coffin contains on the front page, the language "driving on Saddle Road and Waipio Valley Access Roads is prohibited."

4. The Contract signed by Ms. Coffin contains the following language[:]

"(5) use restrictions: vehicle will not be used or operated by anyone: ... Q. who drives on Route 200 (Saddle Road)[1] Hawaii except for government renters with official duty orders. (6) Liability insurance: if there is no violation of any of the use restrictions in paragraph 5 above, renter and any authorized driver shall, while operating the

---

1. Attached to Budget's motion for summary judgment was an affidavit of Suzanna Tavares, a customer service representative with Budget, which indicated that "BUDGET does not allow its renters to drive upon Saddle Road because the road's terrain presents a higher risk for car accidents."

vehicle, be provided with liability coverage in accordance with the standards [sic] provisions of a basic automobile liability policy or in accordance with requirements of a qualified self-insurer. . . ."

5. By signing the rental contract, Ms. Coffin was advised of Budget's prohibition against driving the rented vehicle on Saddle Road.

6. Saddle Road is a public roadway on the Island and County of Hawaii, State of Hawaii.

7. On November 23, 1992, the vehicle owned by Budget and rented and operated by Coffin, was involved in a collision on said Saddle Road, with a vehicle operated by Third Party Defendant and intervenor Ralph Roubique.

8. Ralph Roubique was injured in said collision and will be making a claim for personal injury against Constance Coffin.

9. Budget has denied liability coverage, claiming that since Coffin did not have its permission to drive on Saddle Road, she did not have Budget's express or implied permission to use the vehicle at the time of the accident.

On May 13, 1994, Budget filed an action for declaratory relief seeking an order declaring that Budget had no duty to defend and/or indemnify Coffin against any claims that may be made against Coffin by Roubique, and Roubique intervened. On June 23, 1994, Coffin filed a third-party complaint against Roubique.

Thereafter, on August 18, 1994, Budget filed a motion for summary judgment. On September 6, 1994, Coffin filed a cross-motion for summary judgment, which Roubique joined. After a September 14, 1994 hearing, the circuit court granted Coffin's cross-motion for summary judgment and denied Budget's motion for summary judgment by order filed June 8, 1995. The order contained the following conclusions of law:

1. There being no genuine issue of material fact, this matter is ripe for summary judgment.

2. Budget provides automobile liability insurance coverage in accordance with Hawaii's No-Fault Laws.

3. The contractual provision which prohibits driving on Saddle Road, a public roadway[,] is void as against public policy.

4. Although Budget has a right to limit the use of its vehicles on public roads, the prohibition against driving on Saddle Road impermissibly cuts into Hawaii's No-Fault Automobile Insurance Requirements; such prohibition is void as against public policy.

5. In accordance with Section 431:10C–301 of the Hawaii Revised Statutes as amended June 3, 1992, Budget is obligated to provide Constance Coffin with automobile liability insurance coverage up to limits of $25,000.00.

. . . .

7. Third Party Defendant Ralph Roubique is bound by these findings of fact and conclusions of law in the same manner and to the same extent as the Plaintiff and Defendant.

WHEREFORE IT IS ORDERED, ADJUDGED AND DECREED that Plaintiff Budget Rent A Car Systems, Inc.'s Motion for Summary Judgment is denied and Defendant and Cross–Movant Constance Coffin's Cross–Motion for Summary Judgment, along with the joinder of Third Party Defendant/Intervenor Ralph Roubique is granted.

This timely appeal followed.

## II. STANDARDS OF REVIEW

It is well settled that:

On appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

*Harris v. DeSoto*, 80 Hawai'i 425, 430–431, 911 P.2d 60, 65–66 (1996) (citation omitted).

The issue on appeal involves statutory interpretation. We have often noted that:

> The interpretation of a statute is a question of law reviewable *de novo*. In so doing, [o]ur primary duty in interpreting and applying statutes is to ascertain and give effect to the legislature's intention to the fullest degree. Although the intention of the legislature is to be obtained primarily from the language of the statute itself, we have rejected an approach to statutory construction which limits us to the words of a statute, for when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. Thus, the plain language rule of statutory construction does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory review. Were this not the case, a court may be unable to adequately discern the underlying policy which the legislature seeks to promulgate and, thus, would be unable to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute.

*Sato v. Tawata,* 79 Hawai'i 14, 17, 897 P.2d 941, 944 (1995) (citations, some brackets, and ellipses omitted).

## III. *DISCUSSION*

A. *The Circuit Court Erred in Concluding that Budget's Use Limitation Provision Was Void as Being Against Public Policy.*

Budget argues that the circuit court erred in denying its motion for summary judgment and granting Coffin's cross-motion for summary judgment based on its conclusion that Budget's use limitation provision "impermissibly cuts into Hawai'i's no-fault automobile insurance requirements" and is therefore void as being against public policy. Budget essentially contends that the use limitation provision is a proper exercise of its right to limit the scope of its express permission accorded Coffin to drive the rental vehicle. Budget maintains that, when Coffin violated the terms of the use limitation provision by driving on Saddle Road, she exceeded the scope of Budget's express permission and ceased to be a permissive user, coverage for whom is mandated by statute. We agree for the two following reasons.

1. **A Literal Reading of The Plain Language of Hawai'i Revised Statutes (HRS) §§ 431:10C–104 and 431:10C–105 Does Not Mandate that All Motor Vehicles Must be Covered by Insurance at All Times the Vehicle Is Used or Operated on a Public Street, Road, or Highway.**

Roubique and Coffin argue that the circuit court was correct in concluding that the use limitation provision was void as against public policy pursuant to HRS §§ 431:10C–104 and 431:10C–105 (1993). HRS § 431:10C–104 provides in pertinent part:

> **Conditions of operation and registration of motor vehicles.** (a) Except as provided in section 431:10C–105, no person shall operate or use a motor vehicle upon any public street, road or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy.
>
> (b) Every owner of a motor vehicle used or operated at any time upon any public street, road or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this article and shall maintain the no-fault policy at all times for the entire motor vehicle registration period.

HRS § 431:10C–105 provides:

> **Self-insurance.** The motor vehicle insurance required by section 431:10C–104 may be satisfied by any owner of a motor vehicle if:
>
> (1) Such owner provides a surety bond, proof of qualifications as a self-insurer, or other securities affording security substantially equivalent to that afforded under a no-fault policy, providing coverage at all times for the entire motor vehicle registration period, as determined and approved by the commissioner under regulations; and

(2) The commissioner is satisfied that in case of injury, death or property damage, any claimant would have the same rights against such owner as the claimant would have had if a no-fault policy had been applicable to such vehicle.

Roubique and Coffin submit that: (1) the plain language of HRS § 431:10C–104 expressly requires that "no motor vehicle shall be operated or used on a public road *at any time* unless the vehicle is insured under a no-fault policy *at all times*"; and (2) the plain language of HRS § 431:10C–105 provides that, if a motor vehicle owner, such as Budget, chooses to be self-insured, the owner must provide "coverage *at all times* for the entire motor vehicle registration period." Thus, Roubique and Coffin contend that a literal reading of both sections together requires that Budget must provide liability coverage applicable to its rental vehicles *any time* the rental vehicle is on a public street, road, or highway, and *at all times* during the vehicle registration period. We disagree with the reading of HRS §§ 431:10C–104 and 431:10C–105 urged by Roubique and Coffin.

HRS § 431:10C–104 is entitled "[c]onditions of operation and registration of motor vehicles" and states that "[e]very owner of a motor vehicle used or operated at any time upon any public street, road or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this article and shall maintain the no-fault policy at all times for the entire motor vehicle registration period." The plain language of the statute constitutes a mandatory directive to all owners of motor vehicles, establishing the acquisition of a no-fault policy by motor vehicle owners as a precondition to operation or use of their motor vehicle on public streets, roads, or highways. In other words, in exchange for the privilege of the driving a motor vehicle on public streets, roads, and highways, the statute requires the owner of a motor vehicle to insure his or her vehicle for a temporal period, at least coextensive with the motor vehicle's registration period, in at least the minimum amounts established by statute. It does not mandate that insurance companies

or self-insurers must provide coverage for any and all accidents that occur on a public road, street, or highway.

As is borne out by the legislative history underlying HRS § 294–8 (1985), the predecessor to HRS § 431:10C–104, the legislature intended HRS § 431:10C–104 to speak to the obligation of owners of motor vehicles:

Every owner who operates a motor vehicle on the public roadways will be required to take out a basic no-fault insurance policy to cover his [or her] own personal injury losses when operating his [or her] vehicle, losses of any other driver or passenger of his [or her] vehicle, and personal injury losses of any pedestrian that is injured in an accident involving his [or her] vehicle. . . .

. . . .

Every owner of a motor vehicle will be required to have a no-fault policy as a precondition to operating his [or her] vehicle. The bill provides for the enforcement of this protection of the motoring citizen at the time of registration annually, or at the time of purchase, or upon the importation of a foreign licensed vehicle into the State.

Sen. Stand. Comm. Rep. No. 402, in 1973 Senate Journal, at 822. Roubique and Coffin do not cite to any legislative history, nor has our review of the legislative history revealed any indication, that the legislature intended HRS § 431:10C–104 to require motor vehicle insurance coverage for every accident occurring on a public street, road, or highway.

2. **The Circuit Court's Conclusion, Based on Roubique and Coffin's Proffered Interpretation of HRS §§ 431:10C–104 and 431:10C–105, That Budget's Use Limitation Provision Is Void as Being Against Public Policy, Would Mandate Unconditional Coverage For All Accidents on All Public Streets, Roads or Highways, and Would Effectively Render Void All Exclusions in All Contracts of Automobile Insurance.**

Assuming *arguendo* that the language of HRS §§ 431:10C–104 and 431:10C–105 is susceptible to the interpretation proffered by Roubique and Coffin and adopted by the

circuit court, requiring that all motor vehicles be covered by insurance required by HRS chapter 431:10C whenever the motor vehicle is used or operated on any public street, road, or highway, this interpretation, taken to its logical conclusion, would effectively invalidate all provisions in every contract of automobile insurance that could be construed to exclude coverage for any accident that occurs on a public street, road, or highway. In other words, the interpretation of HRS § 431:10C–104 urged by Roubique and Coffin would effectively require that all policies of automobile insurance must unconditionally provide coverage for *all* accidents occurring on *all* public streets, roads, and highways.

As we have previously recognized, "liability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy[.]" *Dawes v. First Ins. Co. of Hawai'i, Ltd.*, 77 Hawai'i 117, 121, 883 P.2d 38, 42, *reconsideration denied*, 77 Hawai'i 489, 889 P.2d 66 (1994); *see also First Ins. Co. of Hawai'i, Inc. v. State*, 66 Haw. 413, 423, 665 P.2d 648, 655 (1983). In keeping with this general principle, Hawai'i's appellate courts have upheld the propriety of several standard exclusions to insurance coverage on numerous previous occasions. *See, e.g., AIG Hawai'i Ins. Co., Inc. v. Smith*, 78 Hawai'i 174, 891 P.2d 261 (1995) ("resident relative" exclusion); *National Union Fire Ins. Co. v. Reynolds*, 77 Hawai'i 490, 889 P.2d 67 (App.1995) ("owned vehicle" exclusion to underinsured motorist insurance policy); *State Farm Mut. Auto. Ins. Co. v. Fermahin*, 73 Haw. 552, 836 P.2d 1074 (1992) ("owned vehicle" exclusion to no-fault policy); *Kang v. State Farm Mut. Auto. Ins. Co.*, 72 Haw. 251, 815 P.2d 1020 (1991) (exclusion barring dual recovery of liability and underinsured motorist vehicle benefits). We therefore decline to endorse Roubique and Coffin's interpretation of HRS § 431:10C–104.

### 3. Budget's Use Limitation Provision Validly Limits its Liability Insurance Exposure by Restricting the Scope of a Renter's Permissive Use.

■ From an alternative perspective, the circuit court's conclusion that Budget's use limitation "impermissibly cuts" into Hawai'i's no-fault insurance requirements and is void as being against public policy is founded on flawed reasoning because it overlooks the fundamental facts that: (1) Coffin—and, indeed, all putative insureds who similarly operate motor vehicles pursuant to a car rental contract—gain entitlement to a potential for insurance coverage applicable to the rental vehicle as permissive users; and (2) the owner of any vehicle, whether lent for profit or not, may impose any condition not in violation of law or public policy on the scope of permission granted to another to drive the vehicle.

■ Thus, despite our holding that HRS § 431:10C–104 does not require unconditional, limitless coverage on all public streets, roads, and highways, from another perspective, Budget's use limitation provision does not even potentially implicate issues of compliance with minimum insurance requirements because the limitation provision is a proper exercise of its authority to restrict the scope of its permission to drive its rental vehicles.

Roubique and Coffin essentially argue that Budget's use limitation limits automobile liability coverage outright as a territorially- or geographically-based express exclusion that negates coverage solely by virtue of an accident's occurrence in certain specified physical locations. The infirmity in Roubique and Coffin's argument is that it overlooks the distinction between an insurer of a vehicle, who limits the use of the vehicle by another through policy exclusions, and an owner of a vehicle, who limits use of the vehicle by another by placing limitations on the scope of permissive use.

HRS § 431:10C–103(5) defines "insurer" as "every person holding a valid certificate of authority to engage in the business of making contracts of motor vehicle insurance in this State." Budget, however, is not "in the business of making contracts of motor vehicle insurance"; to the contrary, Budget is mere-

ly the self-insured "owner"[2] of a fleet of motor vehicles that it permits others to use for a fee. To hold otherwise would effectively render all car rental companies doing business in Hawai'i "insurers," regardless of whether they are self-insurers or not, generally subjecting them to the requirements of HRS chapter 431[3] and to the regulatory control of the insurance commissioner and the Department of Commerce and Consumer Affairs.

With respect to this distinction, Budget— or for that matter, any car rental company— bestows permission to use a rental vehicle upon its customers, albeit for a fee, and dictates the scope of the renter's permissive use by its contract with its customers. In other words, the rental agreement is not a contract of insurance and is not the source of the customer's entitlement to insurance coverage; the customer is statutorily entitled to the minimum motor vehicle insurance coverage required by HRS § 431:10C–301. In this light, contrary to Roubique and Coffin's position, the rental agreement does not independently confer any insurance coverage, the use limitation provision, *per se,* is not a coverage exclusion, and, most importantly, the rental company is not an "insurer" as defined by HRS § 431:10C–103(5).

Thus, a car rental company may limit its liability, but not necessarily by the same mechanisms by which an "insurer" would. In the present context, unlike an "insurer" which limits its liability through the use of policy exclusions that deny insurance coverage under specified conditions, a car rental company may take a more direct route toward the same end, in its capacity as "owner" of the rental vehicle, by directly limiting the customer's permission to use the rental vehi-

cle by prohibiting its customers from using the rental vehicle under certain conditions, or in designated areas, by mutual contractual agreement.

■ In the present case, therefore, Budget's use limitation merely limits the scope of a renter's permissive use, which, as the circuit court properly concluded, Budget is within its rights to achieve by contract. Put another way, from the viewpoint of the statutory scheme, Budget properly denied Coffin the substantial equivalent of liability insurance coverage, not because the use limitation provision itself constituted a valid coverage exclusion cognizable under Hawai'i's motor vehicle insurance scheme, but, rather, Budget properly denied coverage because the use limitation provision restricted the scope of Coffin's permission to drive the rental vehicle, and, having exceeded the scope of permission at the time of the accident, Coffin was no longer a permissive user of the rental vehicle, coverage for whom was mandated by statute.

It is important to stress that our holding in the present case is limited exclusively to the permissive use context. A car rental company may validly place geographically or territorially based use restrictions on its vehicles and, in turn, effectively limit its liability insurance exposure solely because it is within its rights, as the owner of a vehicle for which permission is being granted to a customer to drive, to place restrictive conditions on the scope of the permission granted to the customer. We express no opinion on the propriety of an insurance company's attempt to exclude coverage based on territorial or geographic limitations.

---

**2.** HRS § 431:10C–103(14) defines "owner" in pertinent part as "a person who holds the legal title to a motor vehicle[.]"

**3.** *See, e.g.,* HRS § 431:3–201 (1993) (requiring application for certificate of authority from the insurance commissioner); HRS § 431:3–205 (1993) (requiring, as a precondition to the writing of vehicle insurance in Hawai'i, deposit of at least $1,000,000 in security in a federally insured financial institution within the state); HRS § 431:3–301 (1993) (requiring, *inter alia,* submission of annual statements of financial condition, transactions and affairs prepared in accordance

with the National Association of Insurance Commissioners' (NAIC) annual statement instructions and Practices and Procedures Manual); HRS § 431:3–302 (requiring submission of similar annual statements directly to the NAIC); HRS § 431:3–302.5 (1993) (requiring submission of an audit of the financial statements of the insurer to the insurance commissioner); HRS § 431:7–101 (1993) (requiring payment of fees); HRS § 431:7–201 (1993) (requiring filing of an annual tax statement with the commissioner); HRS §§ 431:9–101 through 9–240 (1993) (requiring the licensing of·agents and personnel).

Based on the foregoing, we hold that Budget's use limitation is not violative of public policy and validly limits its liability insurance exposure by restricting the scope of a renter's permissive use.

B. *Coffin Was Not a Permissive User of the Rental Vehicle at the Time of Her Accident with Roubique.*

As previously noted, HRS § 431:10C–105 provides that the owner of a motor vehicle may comply with the motor vehicle insurance requirements of HRS § 431:10C–104 by providing "security substantially equivalent to that afforded under a no-fault policy," and satisfying the insurance commissioner that, in case of injury, death, or property damage, "any claimant would have the same rights against such owner as the claimant would have had if a no-fault policy had been applicable to such vehicle."

HRS § 431:10C–103(12) (1993) defines "no-fault policy" as "an insurance policy which meets the requirements of section 431:10C–301." HRS § 431:10C–301 (1993) in turn provides in pertinent part:

**Required motor vehicle policy coverage.** (a) In order to meet the requirements of a no-fault policy as provided in this article, an insurance policy covering a motor vehicle shall provide:

. . . .

(2) Insurance to pay on behalf of the owner *or any operator of the insured motor vehicle using the motor vehicle with the express or implied permission of the named insured,* sums which the owner or operator may legally be obligated to pay for injury, death, or damage to property of others[.]

(Emphasis added.)

HRS § 431:10C–103(4) defines "insured motor vehicle" in pertinent part as "a motor vehicle: ... [t]he owner of which is a self-insurer with respect to such vehicle." As a self-insurer pursuant to HRS § 431:10C–105, therefore, Budget is statutorily obligated to provide coverage on behalf of any operator of any of the rental vehicles it owns who "[uses]

the motor vehicle with the express or implied permission of the named insured."

Roubique and Coffin unconvincingly argue that Budget is not the "named insured" whose express or implied permission defines the scope of permissive use described in HRS § 431:10C–301(a)(2) because Budget, as a self-insurer, would be in a conflict of interest position by effectively being able to limit the scope of its own liability insurance exposure by restricting the scope of its permission granted to its renters. In view of our holding that Budget's use limitation provision does not contravene HRS § 431:10C–104 and, therefore, public policy, and constitutes a valid exercise of its authority to limit the scope of its permission, and in turn, its liability insurance exposure, we likewise reject this argument, as it is functionally equivalent to Roubique and Coffin's earlier arguments and is subsumed in our earlier holding.

As we recently noted in *State Farm Mutual Automobile Insurance Co. v. GTE Hawaiian Telephone Co., Inc.,* 81 Hawai'i 235, 915 P.2d 1336 (1996):

"Pursuant to the above-stated reasoning and the language of the applicable statutes, [a putative permittee] therefore would qualify [for coverage from] ... [an insurer or self-insurer] if [the putative permittee] was using the [rental] vehicle with either the express or implied permission of [the owner of the vehicle]." *See* 12 G. Couch, *Cyclopedia of Insurance Law* § 45:350 at 692–93 (2d ed.1981) [hereinafter, Couch] ("The permission required to bring an additional insured within the protection of an omnibus clause may, as a general proposition, be express or implied, and the omnibus clause may specifically provide, or be required by statute to provide, that the permission of the named insured may be express or implied.").

Couch notes that "[e]xpress permission must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference." Couch, *supra,* § 45:351, at 694.

*Id.* at 244–45, 915 P.2d at 1345–46. As the circuit court's findings of fact in the present case indicate, "[t]he Rental Contract signed

by Coffin contains on the front page, the language 'driving on Saddle Road and Waipio Valley Access Roads is prohibited[,]'" and "[t]he Contract signed by Ms. Coffin contains the following language[:] 'use restrictions: vehicle will not be used or operated by anyone: ... Q. who drives on Route 200 (Saddle Road) Hawaii except for government renters with official duty orders.'" Coffin does not dispute these findings, the finding that she signed the rental contract, or the finding that the accident in question occurred on Saddle Road. Nor does she assert that she was not aware of the use limitation provision. By driving the rental vehicle on Saddle Road, Coffin was in breach of the use limitation provision and exceeded the scope of Budget's express permission to drive the rental vehicle accorded her. We therefore hold that, at the time of the accident, Coffin was not a permissive user of the rental vehicle and that Budget is not obligated, as a matter of law, to defend Coffin against any claim Roubique may bring, or to indemnify Coffin for any damages arising out of Roubique's claim.

## IV.  *CONCLUSION*

For the foregoing reasons, the judgment of the circuit court is vacated, and this case is remanded to the circuit court for the entry of an order awarding summary judgment in favor of Budget.