965 P.2d 1274

Charles D. BOWERS and State Farm Mutual Automobile Insurance Company, an Illinois corporation, Plaintiffs–Appellees,

v.

ALAMO RENT–A–CAR, INC., a Florida corporation, John Does 1–5; Jane Does 1–5; and Doe Entities 1–5, Defendant–Appellant.

No. 20273.

Supreme Court of Hawai'i.

June 17, 1998.

Wayne M. Sakai and Judy Y. Chung of Burke, Sakai, McPheeters, Bordner, Iwanaga & Estes, on the briefs, for defendant-appellant.

Thomas L.H. Yeh, Stephen J.Menezes and Michael W. Moore of Menezes Tsukazaki Yeh & Moore, on the briefs for plaintiffs-appellees.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Defendant-appellant Alamo Rent-a-car, Inc. appeals from a ruling of the circuit court granting partial summary judgment in favor of plaintiffs-appellees Charles Bowers and State Farm Mutual Automobile Insurance Company in this declaratory judgment action. The circuit court ruled that: (1) the escape clause contained in the Alamo rental agreement was void; (2) Alamo has the primary obligation to defend and indemnify Bowers against claims for personal injury and property damage incurred while driving an Alamo vehicle; and (3) State Farm's obligation was limited to providing excess liability coverage to Bowers. For the reasons set forth below, we affirm the judgment of the circuit court. In doing so, it is necessary to address the effect of the 1997 amendments to the Hawai'i Motor Vehicle Insurance Law.

## I. BACKGROUND

The facts of this case are uncontested. On February 26, 1994, Bowers rented a motor vehicle from Alamo. Bowers is a resident of Anchorage, Alaska. Bowers declined to purchase excess liability coverage offered by Alamo through its policy with Continental Insurance Company, although he did purchase collision coverage. The rental agreement which Bowers signed contained the following language:

> If there is no other valid and collectible insurance, whether primary, excess, or contingent, available to the renter or any authorized driver while operating the car, then Alamo's vehicle liability policy shall pay damages not to exceed minimum limits required by applicable law.

This contractual language is commonly referred to as an "escape clause." 8A Appleman, Insurance Law and Practice § 4906 (1981).

At the time Bowers rented the vehicle from Alamo, he was insured by a personal automobile policy issued by State Farm. This policy contained an "excess insurance" clause, which provided that: "If a temporary substitute car, a non-owned car or a trailer designed for use with a private passenger car or utility vehicle has other vehicle liability coverage on it, then this coverage is excess."

On March 8, 1994, while operating the rental vehicle, Bowers was involved in an accident. As a result of the accident, the driver of another automobile allegedly sustained bodily injuries. This driver gave notice to Alamo and State Farm of a claim against Bowers for personal injury resulting from the collision. In response, Alamo asserted that Bowers's policy with State Farm was the primary liability insurance provider under the terms of the rental agreement. Alamo thus denied any duty to defend or indemnify Bowers. Although State Farm disagreed with Alamo's attempt to disavow responsibility for coverage, it adjusted and settled the other driver's claim against Bowers.[1]

On March 30, 1995, Bowers and State Farm filed a complaint for declaratory relief in circuit court seeking a declaration that Alamo, as the owner of the vehicle, had an obligation pursuant to the Hawai'i Motor Vehicle Insurance Law, Hawai'i Revised Statutes (HRS) Chapter 431:10C, to provide mandatory minimum coverage for its vehicles and that the attempt to shift primary liability coverage to the renter's personal automobile insurance policy was void as violative of the statute and against public policy. On March 27, 1996, plaintiffs moved for summary judgment. On April 19, 1996, Alamo filed a motion for summary judgment. On May 24, 1996, after hearing on both motions for summary judgment, the circuit court granted summary judgment in favor of Bowers and

---

1. The complaint filed by Bowers and State Farm in the instant action contained claims for reimbursement and subrogation against Alamo for expenditures made by State Farm. The judgment of the circuit court reserved these claims for future determination and certified the declaratory judgment for appeal pursuant to Hawai'i Rule of Civil Procedure Rule 54(b).

State Farm, declaring that Alamo had the primary duty to defend Bowers.

Alamo moved for Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) certification of the declaratory judgment. Plaintiffs did not oppose this motion. The circuit court granted Alamo's motion for Rule 54(b) certification and filed a judgment on October 28, 1996, ruling that:

1. The escape clause of the automobile rental agreement issued by Defendant Alamo Rent-a-car to Plaintiff Charles Bowers is declared to be void.

2. Under the remaining terms of said rental agreement, and pursuant to Hawai'i insurance law, HRS Chapter 431:10C, [Alamo] had the primary obligation to provide [Bowers] with liability insurance coverage and to defend and indemnify [Bowers] against claims for personal injury and property damage arising out of the automobile accident which occurred on March 4, 1994, up to the minimum limits required by HRS Chapter 431:10C at the time of said accident.

3. [State Farm's] obligation was to provide excess liability insurance coverage to [Bowers] to the extent that the minimum limits of liability coverage required to be provided by [Alamo] by HRS Chapter 431:10C was insufficient.

Alamo then appealed the declaratory judgment. On appeal, Alamo argues that: (1) the rental agreement does not violate public policy; (2) Hawai'i law does not require that the owner's insurance be primary at all times; (3) the rental agreement was a valid contract under which Bowers agreed to have his own insurance be primary; and (4) Alamo is not trying to avoid the requirements of the Hawai'i insurance code because, under the terms of the agreement, minimum liability insurance would always be in effect.

Subsequent to the filing of this appeal, the legislature enacted changes to HRS Chapter 431:10C. The following statutory section was added to the HRS:

(a) A U-drive motor vehicle insurance policy shall be primary; provided that its bodily injury liability coverage shall be secondary to the operator's or renter's motor vehicle insurance policy if:

(1) The U-drive rental business provides any claimant or person sustaining accidental harm or damages, as a result of the operation of the rental vehicle, the identity and address of the operator or renter, along with any information available to the U-drive rental business as to the identity and address of any insurer under any liability policies applicable to the operator or renter; provided that the U-drive rental business shall make reasonable efforts to obtain such information;

(2) A suit may be filed and service upon the responsible operator or renter can be effectuated; and

(3) An insurer responds on behalf of the operator or renter to a claim or suit.[2]

HRS § 431:10C–303.5(a) (Supp.1997). This section became effective on January 1, 1998. We ordered supplemental briefing to address the effect of the enactment of this statutory section on the outcome of the instant appeal. Alamo asserts that the enactment of this section indicates that the circuit court was erroneous in holding that its contract was against public policy. Plaintiffs assert that this amendment has prospective effect only and that the enactment of this statute recognizes that, under prior law, Alamo's attempt to shift primary responsibility for providing insurance coverage was unlawful.

## II. *DISCUSSION*

A. **Public policy, as expressed by the Hawai'i Motor Vehicle Insurance Law, does not allow an owner to contractually shift primary responsibility for providing minimum insurance coverage.**

■ This case presents an issue of first impression in Hawai'i. We must determine

2. A "U-drive rental business" is statutorily defined as "the business of renting or leasing to a customer a motor vehicle for a period of six months or less notwithstanding the terms of the rental or lease if in fact the motor vehicle is rented or leased for a period of six months or less." HRS § 431:10C–103(21) (1993). The parties do not contest that Alamo qualifies as a U-drive rental business under the terms of the statute.

whether the owner of a vehicle may satisfy the minimum requirements of HRS Chapter 431:10C by contracting that the owner's insurance policy will not have any responsibility for providing liability coverage unless a permissive user's personal insurance policy is insufficient to meet the statutorily required minimum amount of liability insurance. This question has generated diametrically opposed holdings in courts of other jurisdictions.[3] We hold that the owner of a vehicle has the primary obligation to provide minimum coverage for the owned vehicle and that this obligation may not be avoided through a unilateral contract with a permissive user of the vehicle.

We review statutes *de novo*. *Shimabuku v. Montgomery Elevator Co.*, 79 Hawai'i 352, 357, 903 P.2d 48, 52 (1995). "The starting point in statutory construction is to determine the legislative intent from the language of the statute itself." *State v. Kaakimaka*, 84 Hawai'i 280, 289, 933 P.2d 617, 626, *reconsideration denied*, 84 Hawai'i 496, 936 P.2d 191 (1997) (quoting *State v. Ortiz*, 74 Haw. 343, 351–52, 845 P.2d 547, 551–52, *reconsideration denied*, 74 Haw. 650, 849 P.2d 81 (1993)). "[O]ur foremost obligation [when interpreting a statute] is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself." *State v. Aluli*, 78 Hawai'i 317, 320, 893 P.2d 168, 171 (1995) (citation omitted). We read statutory language in the context of the entire statute, "and construe it in a manner consistent with its purpose." *Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 71, 919 P.2d 969, 983 (1996) (citation and internal quotation marks omitted). "A rational, sensible and practicable interpretation [of a statute] is preferred to one which is unreasonable or impracticable." *State v. Lobendahn*, 71 Haw.

111, 112, 784 P.2d 872, 873 (1989) (citations and internal quotation marks omitted) (brackets in original). "The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality." *State v. Arceo*, 84 Hawai'i 1, 19, 928 P.2d 843, 861 (1996) (citation and internal quotation marks omitted).

At the time Bowers signed the rental agreement with Alamo, HRS § 431:10C–104(b) (1993) provided that

> [e]very owner of a motor vehicle used or operated at any time upon any public street, road, or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this article and shall maintain the no-fault policy at all times for the entire motor vehicle registration period.[4]

This section requires all owners of motor vehicles to "obtain" minimum coverage for the owned vehicle. Alamo asserts that this section does not mandate that the owner's insurance policy be primary, as long as there is coverage on the vehicle. Alamo claims that its rental agreement satisfied the requirements of this section because minimum liability coverage would always be provided, either through the renter's policy or, secondarily, through Alamo's policy. We disagree with Alamo's contention that this is sufficient to meet the demands of the statute.

The operant clause contained in Bowers's policy with State Farm states that the coverage is excess if the other vehicle, in this case Alamo's rental car, has "other vehicle liability coverage." This coverage would be transformed from excess to primary only if there were no vehicle liability coverage at all on the other vehicle. Therefore, to reach the result urged by Alamo, we would have to

**3.** *See, e.g. Hertz Corp. v. State Farm Mut. Ins. Co.*, 573 N.W.2d 686 (Minn.1998) (rental agreement escape clause violates Minnesota no-fault act); *State Farm Mut. Auto. Ins. Co. v. Enter. Leasing Co.*, 452 Mich. 25, 549 N.W.2d 345 (1996) (car rental companies must provide primary insurance coverage and may not shift that responsibility to drivers by agreement); *Irvin v. Rhodes*, 929 S.W.2d 829 (Mo.Ct.App.1996) (Missouri law does not require that the vehicle owner's policy be primary, but can shift responsibility by contract); *State Farm Mut. Auto. Ins. Co. v. Clarendon Nat'l*

*Ins. Co.*, 604 A.2d 384 (Del.1992) (escape clause violates Delaware motor vehicle insurance law). *See also* 8A Appleman, Insurance Law and Practice §§ 4906, 4910 (1981) (disapproving of escape clauses in a rental car situation).

**4.** In 1997 this section was amended to replace the term "no-fault" policy with "motor vehicle insurance" policy. No other changes were made to this statutory section.

construe the escape clause in Alamo's rental contract as providing no vehicle liability coverage, thus shifting the entire burden to State Farm. Hawai'i law does not allow vehicles to be operated without insurance. Although Alamo's argument is correct insofar as it asserts that its vehicles would actually have minimum insurance coverage, we hold that it is against public policy for Alamo to acquire coverage for its vehicles in this manner.

Although there is a split in authority among our sister states in considering this issue, our holding herein is consistent with the majority view and represents what we perceive as the better position. In *State Farm v. Enterprise Leasing Company*, 452 Mich. 25, 549 N.W.2d 345 (1996), the Michigan Supreme Court reversed two lower court decisions and held that car rental agreements purporting to shift responsibility for providing primary liability coverage to the driver were violative of Michigan's no-fault act. The court held that "[v]ehicle owners, including [car rental companies] are required to provide primary coverage for their vehicles and all permissive users of their vehicles." *Id.* 549 N.W.2d at 347. The *Enterprise* court based its holding primarily on the language of the Michigan no-fault act, which requires that the owner of a motor vehicle "maintain" minimum liability insurance. The *Enterprise* court expressed the view that "the dominant principle expressly embodied by the no-fault act [is that] vehicle owners and their insurers are responsible for bearing the costs of injuries caused by the permissive use or operation of the vehicle." *Id.* at 349 (*quoting Citizens Ins. Co. v. Federated Mut. Ins. Co.*, 448 Mich. 225, 531 N.W.2d 138, 142 (1995)).[5]

In *Hertz Corporation v. State Farm Mutual Insurance Company*, 573 N.W.2d 686 (Minn.1998), the Minnesota Supreme Court, *en banc*, addressed the issue of whether a self-insured rental car agency could satisfy the Minnesota No–Fault Act requirements by providing liability coverage only in the event that the renter or operator of a rented vehicle does not have other liability coverage. The *Hertz* court held that, although not expressly forbidden by the language of the statute, this violated the general purposes of the no-fault law. The court rejected Hertz's argument that it met the obligations of the no-fault act because there were no circumstances under which the vehicle would be uninsured. The court held that "Hertz's interpretation of the Act would create a practical exemption to the broad statutory mandate that all automobile owners carry liability insurance, an exemption nowhere evident in the language of the statute." *Id.* at 689. Because the court held that Hertz's rental agreement violated the purposes of the Minnesota no-fault act, it voided the clause as against public policy.[6]

In *State Farm v. Clarendon National Insurance Company*, 604 A.2d 384 (Del.1992), the Delaware Supreme Court reversed a decision of the superior court which had upheld an escape clause in an automobile short-term lease agreement. The *Clarendon* court voided a clause which provided that there was no coverage unless the permissive user had "no other available insurance (whether primary, excess or contingent)" or the other insurance was insufficient to meet the minimum standard of the Delaware law. The superior court had upheld this clause on the grounds that, in all situations, the lessor had provided that the minimum liability insurance required by Delaware law would be in effect. However, the *Clarendon* court interpreted the plain language of the Delaware law and concluded that "the Delaware statutory mandate places

---

**5.** We note that the *Enterprise* court alternatively based its holding on the belief that the contractual shifting of liability would be unenforceable against State Farm and would result in the owner of the car being personally liable. This issue is not present in the instant case because the Alamo rental agreement specifically provides that Alamo's insurer would provide minimum coverage if there was no other available insurance. Therefore, we do not utilize this basis as support for our holding in the instant case.

**6.** The Minnesota no-fault act sets out that the purposes of the law are to " 'relieve the severe economic distress of uncompensated victims'; to prevent overcompensation; to assure prompt payment; to 'ease the burden of litigation'; and to correct imbalances and abuses in the automobile accident liability system." *Hertz*, 573 N.W.2d at 689 (citing Minn.Stat. § 65B.42).

the obligation of providing primary insurance coverage upon the policy of the vehicle's owner." *Id.* at 388 (citation omitted).[7] Therefore, the court held that "[t]he public policy of this State, as reflected in the statutory mandate of the Delaware Motor Vehicle Financial Responsibility Law, places the primary financial responsibility to provide insurance coverage on the vehicle's owner. Under the circumstances presented in this record, the 'escape clause' in the Clarendon insurance contract violates that public policy and is void." *Id.* at 390.

We do not agree with the rationales relied upon by the courts cited by Alamo in support of its position. Certain cases cited by Alamo contain factual and legal situations that are sufficiently distinguishable that they do not bear directly on the instant case.[8] Other cases rely solely on contract interpretation and do not address the public policy factors involved. *See, e.g., Co-Operators Ins. v. Allstate Rent-A-Car,* 107 Nev. 17, 804 P.2d 1050 (1991), in which the Nevada Supreme Court validated a rental agreement which provided that the renter's insurance would be primarily liable. The court determined that the governing statute was completely silent on the issue. The court then based its holding strictly on contract interpretation. The *Co-Operators* court did not address what, in our view, are dominant public policy concerns weighing against validation of these arrangements.

In *Insurance Car Rentals v. State Farm Mutual Insurance Company,* 152 Ill.App.3d 225, 105 Ill.Dec. 387, 504 N.E.2d 256 (1987), the Illinois Appellate Court held that a rental agreement which provided that the renter's insurance was primary was valid. The court first determined that the governing statute did not require that the rental company's insurance be primary. Under the facts of *Car Rentals,* the renter was given a clear choice to either (a) opt for a lower price and have his personal insurance be primary or (b) choose to have the rental company provide liability insurance. If the renter desired option (a), the rental company would then call the renter's insurance company to verify the existence of valid insurance.

The *Car Rentals* court ruled that the public policy of the state was to protect the public. Because insurance was guaranteed to be available under the facts presented, the court upheld the rental agreement. We do not reach the same conclusion under Hawai'i law. As explained above, we do not read the purpose of the Hawai'i law as satisfied simply because there is insurance available. The owner of the automobile is responsible for providing coverage. The owner, in this case Alamo, may not meet the obligations of the law by contractually shifting responsibility to the driver's insurance company. Therefore, we decline to adopt the reasoning of the *Car Rentals* court.

In *Kaneshiro v. Alamo Rent-A-Car,* 909 F.Supp. 752 (D.Hawai'i 1996), *question certified by* 137 F.3d 634 (9th Cir. 1998), the United States District Court for the District of Hawai'i, applying its view of Hawai'i law, upheld the Alamo rental agreement provision at issue in the instant case. The *Kaneshiro* court based its holding on the parties' freedom of contract. The court reasoned that the renter made a conscious decision to decline Alamo's offer of liability insurance and to have his personal insurance policy be primary.[9] Therefore, unless against public policy, the court reasoned that the parties' agreement was valid. The court held that the contract did not violate the public policy enumerated by HRS Chapter 431:10C. The *Kaneshiro* court based its decision on two

---

7. The relevant portions of the Delaware law relied upon by the *Clarendon* court state that: "No owner of a motor vehicle registered in this State ... shall operate or authorize any other person to operate such vehicle unless the owner has insurance on such motor vehicle." Del.Code Ann. tit. 21, § 2118(a) "Such owner's policy of liability insurance shall ... insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured[.]" Del.Code Ann. tit. 21, § 2902(b)(2).

8. *See e.g. Kattoura v. Patel,* 262 N.J.Super. 34, 619 A.2d 1031 (1993) (long-term lease required primary insurance; user contracted for insurance specifically for that vehicle; both insurance companies were party to the agreement).

9. Kaneshiro had a personal automobile insurance policy through HIG.

Michigan appellate court cases, *Enterprise Leasing Company v. Sako*, 207 Mich.App. 422, 526 N.W.2d 21 (1994) and *State Farm Mutual Insurance Company v. Snappy Car Rental*, 196 Mich.App. 143, 492 N.W.2d 500 (1992). The court held that

> *Sako* and *Snappy Car Rental* are persuasive here. The rental agreement between Alamo and Kaneshiro does not limit coverage below the minimum standards set by Hawaii's no-fault law.... In shifting primary liability to HIG, the rental agreement does not bypass the minimum statutory requirements. There is no question from the record that the car has basic insurance coverage; the only question is which insurer is primarily liable. Thus, in reviewing the evidence presented, the court finds that the rental agreement satisfies the purpose and intent of Hawaii's no-fault statute.

*Kaneshiro*, 909 F.Supp. at 758.

Both cases relied upon by the federal court, *Sako* and *Snappy Car Rental*, were subsequently reversed by the Michigan Supreme Court in *Enterprise Leasing*, discussed *supra*. On appeal of *Kaneshiro*,[10] the United States Court of Appeals for the Ninth Circuit declined to substitute its judgment on this question for ours. The Ninth Circuit certified to this court the question "Can the owner of a motor vehicle, who is in the business of renting its motor vehicles to others, fulfill its minimum liability coverage obligation under the No–Fault Law by providing in its rental agreements that any liability insurance available to the renter is primary and that the owner's own liability insurance is secondary?"[11]

■ The district court in *Kaneshiro* recognized that a provision in a rental agreement which conflicts with public policy is void. 909 F.Supp. at 755 n. 3 (citing *State Farm Mut. Auto. Ins. Co. v. Fermahin*, 73 Haw. 552, 836 P.2d 1074 (1992)). With due respect to our colleague on the federal court, and for the reasons set forth above, we hold that Alamo's rental agreement provision, which attempts to shift primary responsibility to the renter's personal insurance policy, violates the public policy enumerated in HRS Chapter 431:10C. We agree with the reasoning of the Michigan Supreme Court, overruling the case law relied upon by the *Kaneshiro* court. Therefore, we decline to adopt the reasoning of the *Kaneshiro* court.

Finally, Alamo cites our recent decision in *Budget Rent–A–Car v. Coffin*, 82 Hawai'i 351, 922 P.2d 964 (1996), for support of its contention that the owner's insurance is not required to be primary at all times. Alamo's argument contemplates an unwarranted extension of *Coffin*. Our holding in *Coffin* does not counsel a result contrary to that reached by the circuit court in this case. In *Coffin*, we held that a use restriction which prohibited driving a rental vehicle on, *inter alia*, Saddle Road on the Island of Hawai'i was not void as against public policy. We noted that,

> in exchange for the privilege of the driving a motor vehicle on public streets, roads, and highways, *the statute [ (HRS § 431:10C–104) ] requires the owner of a motor vehicle to insure his or her vehicle* for a temporal period, at least coextensive with the motor vehicle's registration period, in at least the minimum amounts established by statute. It does not mandate that insurance companies or self-insurers must provide coverage for any and all accidents that occur on a public road, street, or highway.

*Id.* at 355, 922 P.2d at 968 (emphasis added). Our holding in *Coffin*, namely, that the owner of a vehicle may place limited use restrictions on the scope of permission to drive its vehicle, cannot be extended to uphold Alamo's contention that it should be allowed to meet the requirements of HRS Chapter 431:10C by avoiding liability under all situations where the driver is covered by another policy. We expressly recognized in *Coffin* that the statute requires *owners* to provide insurance. This insurance may then be limited in the permissive use context. In *Budget*

---

10. Along with a companion case, *Allstate Ins. Co. v. Alamo Rent–A–Car* which presents the same issue.

11. We accepted the certified question on March 12, 1998. The certified question appeal is currently docketed as No. 21386. This opinion answers the certified question of the Ninth Circuit.

*Rent–A–Car Systems v. Ricardo,* 85 Hawai'i 243, 942 P.2d 507 (1997), we held that *Coffin* did not validate all potential use restrictions. *Ricardo* invalidated a use restriction which attempted to deny insurance coverage when a rental vehicle was operated by an intoxicated driver. We stated that "[i]t is true that there is general language in *Coffin* that could be interpreted to approve the application of any imaginable use restriction. . . . The case, however, does not stand for any such broad proposition; like any precedent, *Coffin* was decided on the facts then before the court." *Ricardo,* 85 Hawai'i at 248, 942 P.2d at 512. As in *Ricardo,* we decline in the instant case to extend *Coffin* to the result urged by Alamo.

■ For the above reasons, we affirm the decision of the circuit court that the escape clause in Alamo's rental agreement is void as violative of public policy. Therefore, Alamo has the primary obligation to defend Bowers against claims for personal injury and property damage incurred while operating Alamo's vehicle and State Farm's obligation is limited to providing excess liability coverage.

## B. The 1997 amendment does not affect the result of this case.

■ The 1997 enactment of HRS § 431:10C–303.5 provides for automatic shifting of primary coverage in a U-drive situation if certain specific statutory elements are satisfied. Contrary to Alamo's assertion in its supplemental brief, this does not equate to a validation of a *contractual* shifting of primary responsibility. To validate the escape clause in the Alamo rental agreement would circumvent the legislative intent that primary responsibility for coverage be shifted only if certain criteria are met.

The 1997 amendment indicates that the legislature is willing, with definite limitations, to allow primary responsibility for minimum liability coverage to be shifted away from the vehicle owner in a U-drive situation. However, this does not alter our holding that the dominant public policy of HRS Chapter 431:10C is that vehicle owners are primarily responsible for providing minimum coverage for their owned vehicles. We reiterate that there is a clear differentiation between shifting primary responsibility through a legislative enactment and a private, unilateral contract. Nothing in the 1997 amendment indicates that the legislature intended to condone agreements between private parties to shift primary responsibility for providing the minimum coverage mandated by law.

We will not apply this statute retroactively. Application of the statute retroactively would impose an additional duty on State Farm. HRS § 1–3 (1993) provides that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended." Also, this court has noted the "general rule in most jurisdictions that [s]tatutes or regulations which say nothing about retroactive application are not applied retroactively if such a construction will impair existing rights, create new obligations or impose additional duties with respect to past transactions." *Clark v. Cassidy,* 64 Haw. 74, 77 n. 6, 636 P.2d 1344, 1346 n. 6 (1981).

*State of Hawai'i Org. of Police Officers v. Society of Professional Journalists–University of Hawaii Chapter,* 83 Hawai'i 378, 389, 927 P.2d 386, 397 (1996) (brackets in original) (parenthetical omitted).

■ State insurance laws become incorporated into existing contracts at the time of enactment. *See* Holmes's Appleman on Insurance, 2d § 9.1 at 477 (1996) ("The statutory law in force and effect at the time of the issuance of a policy becomes a part of the contract as though expressly written therein and a policy must be considered to contain those requirements.") At the time of the accident, Hawai'i law did not allow the burden of primary liability insurance to be contractually shifted. State Farm contracted only to provide excess insurance to Bowers in the expectation that, as a permissive user of a vehicle, he would be covered primarily by the mandatory insurance requirements of Hawai'i law. To retroactively apply the 1997 statutory amendment would increase the burden on State Farm. Therefore, because the statute does not expressly indicate an intent to be applied retroactively and retroactive application would increase State Farm's obligations, we hold that the enact-

ment of this statutory section has no effect on causes of action arising before its effective date of January 1, 1998.[12]

### III. *CONCLUSION*

For the foregoing reasons, we affirm the judgment of the circuit court in this interlocutory appeal. We remand this case to the circuit court for determination of the remaining issues presented.

RAMIL, Justice, concurring.

Although I concur with the result reached by the majority in this case, I disagree with the majority's reasoning. In particular, I disagree with the majority's holding that Alamo's rental agreement violated public policy. Instead, I would hold that Alamo was the primary insurer based on the terms of the agreements at issue in this case.

The majority states that "the dominant public policy of HRS Chapter 431:10C is that vehicle owners are primarily responsible for providing minimum coverage for their owned vehicles." Majority opinion at 1281. However, I cannot agree with the majority's discovery of such a broad public policy in the face of the legislature's subsequent amendment of HRS ch. 431:10C. On June 19, 1997 (effective January 1, 1998), the legislature enacted Act 251, which provided, *inter alia,* that the "bodily injury liability coverage" of a U-drive motor vehicle insurance policy "*shall* be secondary to the operator's or renter's motor vehicle insurance policy" if certain procedural requirements are met. 1997 Haw. Sess. L. Act 251, § 2, at 517 (codified at HRS § 431:10C–303.5 (Supp.1997)) (emphasis added).[1]

Although Act 251 was adopted after the events at issue in this case, we have often held that "subsequent legislative history or amendments" may be examined in order to confirm our interpretation of statutory provisions. *See Keliipuleole v. Wilson,* 85 Hawai'i 217, 225, 941 P.2d 300, 308 (1997); *State v. Ganal,* 81 Hawai'i 358, 372, 917 P.2d 370, 384 (1996); *Pacific Int'l Servs. Corp. v. Hurip,* 76 Hawai'i 209, 217, 873 P.2d 88, 96 (1994); *Franks v. City & County of Honolulu,* 74 Haw. 328, 340 n. 6, 843 P.2d 668, 674 n. 6 (1993). In my view, the subsequent enactment of Act 251 clearly indicates that it is not against public policy for the renter's insurer to provide primary coverage for bodily injury liability. Act 251 states that the renter's insurer *shall* be primary if the specified notice requirements are satisfied. Inasmuch as the legislature has unambiguously spoken in favor of primary coverage by the renter's insurer, I cannot agree with the majority's analysis in this case.

There are at least two reasons why the legislature might have decided to allow the renter's insurer to assume primary coverage for bodily injury liability. First, if the rental agency's insurer is required to be primary, rental agencies would be forced to charge their customers more in order to cover their liability insurance costs. But if customers already have liability coverage under their individual policies, the customers are essentially paying for the same coverage twice. Thus, the overall insurance burden on the consumer is higher than it would be if the renter's insurer were primary. Second, car rental agencies are part of the tourist industry. Obviously, visitors coming to Hawai'i rent automobiles. Imposing primary coverage on the rental agency's insurer increases the insurance burden on rental agencies, and eventually increases the cost of renting a car in Hawai'i. Inasmuch as tourism is the driving force behind Hawaii's economy, the legislature was probably concerned about the detrimental impact of increased insurance costs on the tourist industry.

In addition, I do not believe that the overall public policy behind HRS ch. 431:10C is offended by requiring the renter's insurer to be primary. We have stated that the Hawai'i no-fault insurance law

> was intended to set a base line, minimum level of automobile liability insurance pro-

---

12. Because of our disposition of this appeal, we do not reach the issue raised by appellees that enforcement of the Alamo rental agreement would effect an improper, unilateral modification of Bowers' policy with State Farm.

1. *See* Majority opinion at 1276, for the text of this statute.

tection. From the outset, it was the legislature's objective to make "a basic, comprehensive, equitable, and reasonably priced auto insurance policy" universally available. Hse. Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1219 ...; *see also* Hse. Conf. Comm. Rep. No. 28, in 1974 House Journal, at 864 ("[T]he no-fault law will continue to provide a basic, comprehensive, equitable and reasonably priced auto insurance premium.").... Thus, "every car on the road [would] have the basic minimal no-fault coverage." Sen. Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 638....

*Hurip,* 76 Hawai'i at 217, 873 P.2d at 96 (emphasis omitted). Thus, in my view, the public policy behind HRS ch. 431:10C is to ensure that "every car on the road [has] the basic minimal nofault coverage." This goal is entirely separate from the question whether the renter's insurer or the rental agency's insurer is primary. As long as one of these insurers provides minimal coverage, the public policy behind our statutes is satisfied. The new public policy discovered by the majority, in favor of imposing primary coverage on the owners of vehicles, is unrelated to the general public policy that we have recognized in the past.

For these reasons, I disagree with the majority's holding that Alamo's rental agreement violated public policy. Nevertheless, I agree with the majority's result based on a plain reading of the contractual terms involved in this case.

The Alamo rental agreement contained an "escape clause" providing:

> If there is no other valid and collectible insurance, whether primary, excess, or contingent, available to the renter of any authorized driver while operating the car, then Alamo's vehicle liability policy shall pay damages not to exceed minimum limits required by applicable law.

Majority opinion at 1275. However, it should be noted that because this clause specifically states that it applies to valid and collectible insurance, "whether primary, excess, or contingent," it is more accurately known as a "super-escape clause." *See* 8A J.A. Appleman, *Insurance Law and Practice* § 4906, at

349–50 (1981) (defining super-escape clause). The State Farm policy contained an "excess clause" providing: "If a temporary substitute car, a non-owned car or a trailer designed for use with a private passenger car or utility vehicle has other vehicle liability coverage on it, then this coverage is excess." Majority opinion at 1275. Consequently, this case involves a conflict between a super-escape clause and an excess clause.

A number of courts in other jurisdictions have held that, in such situations, the policy with the super-escape clause is primary. *See, e.g., Insurance Co. of North Am. v. Continental Cas. Co.,* 575 F.2d 1070 (3d Cir. 1978); *Protective Nat'l Ins. Co. v. Bell,* 361 So.2d 1058 (Ala.1978); *Automobile Underwriters, Inc. v. Hardware Mut. Cas. Co.,* 49 Ill.2d 108, 273 N.E.2d 360 (1971). These courts reason that, because the excess clause only provides coverage when primary insurance is exhausted, there is no "other valid and collectible insurance" available. Thus, the super-escape clause is not triggered, and the policy containing the super-escape clause is primary. These courts acknowledge that a super-escape clause specifically mentions excess insurance. Nevertheless, these courts hold that the language requiring "other valid and collectible insurance" is controlling, and the mere inclusion of additional language should not allow insurers to avoid coverage. *See Insurance Co. of North Am.,* 575 F.2d at 1073–74; *Automobile Underwriters, Inc.,* 273 N.E.2d at 362–63. It is true that some jurisdictions give effect to the specific language in the super-escape clause over that of the excess clause. *See, e.g., Government Employees Ins. Co. v. Globe Indem. Co.,* 415 S.W.2d 581 (Ky.1967). Other jurisdictions find the two clauses mutually repugnant and apply both policies pro rata. *See, e.g., Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.,* 444 S.W.2d 583 (Tex.1969). However, I agree with the cases holding that a policy containing an excess clause does not constitute "other valid and collectible insurance" under the terms of a super-escape clause.

Therefore, I would hold, under the terms of the agreements at issue in this case, that Alamo had the primary obligation to defend

Bowers and that State Farm's policy provided excess coverage. I would not, however, hold that Alamo's rental agreement violated public policy.