**FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000239
31-DEC-2024
08:24 AM
Dkt. 113 OP

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

KELLY WAIAU, Individually and as Guardian Prochein Ami
of MINOR BOY 1, RAQUEL BALGA; ROMAINE DEBBIE CASTRO,
as Personal Representative of the Estate of AMOS KEN AGLIAM,
Plaintiffs-Appellants, v.
HAWAII EMPLOYERS' MUTUAL INSURANCE COMPANY, INC.;
FIRST INSURANCE COMPANY OF HAWAII, LTD.; GENERAL STAR
INDEMNITY COMPANY; NORTH AMERICAN CAPACITY INSURANCE COMPANY,
Defendants-Appellees, and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10;
and ROE GOVERNMENTAL ENTITIES 1-10, Defendants

NO. CAAP-20-0000239

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 18-1-0123K)

DECEMBER 31, 2024

LEONARD, ACTING CHIEF JUDGE, WADSWORTH AND NAKASONE, JJ.

OPINION OF THE COURT BY LEONARD, ACTING CHIEF JUDGE

The appellants in this case challenge two summary
judgment orders entered against them and in favor of three
insurance companies. With these orders and a judgment, all of

the appellants' claims against these insurers were dismissed with prejudice.  The appellants' claims arose, in the first instance, from the work-related death of a trucking company employee.  When the employer and the deceased employee's co-workers were sued, the insurance companies denied any duty to defend or provide coverage for liability.  That litigation ended with a judgment in favor of the appellants herein and an assignment of the defendants' claims against multiple insurers.  That assignment underlies this lawsuit and appeal.

The appellants argue that the court below erred in granting summary judgment based on the employee and fellow employee exclusions contained in, or incorporated into, the insurers' policies.  The appellants argue that these exclusions are invalid and unenforceable on various grounds, including based on a severability-of-interests clause and the requirements of the Hawai‘i Motor Vehicle Insurance Law.  We hold that the severability-of-interests provision does not entitle appellants to relief in this case.  We further hold, in brief summary, that the insurers were not entitled to a dismissal of all claims against them with prejudice because, *inter alia*, enforcement of the subject policy exclusions would conflict with statutory mandates, and under the terms of the policies, the statute takes precedence over conflicting policy provisions.  However, the court below did not err in concluding that the excess coverage insurers had no duty to defend the claims in the underlying lawsuit.

Plaintiffs-Appellants Kelly Waiau, individually and as Guardian Prochein Ami of Minor Boy 1, Raquel Balga, and Romaine Debbie Castro, as Personal Representative of the Estate of Amos Ken Agliam (**Waiau Parties**), appeal from the March 24, 2020 Rule 54(b) Final Judgment entered by the Circuit Court of the Third Circuit (**Circuit Court**),[1] which was amended by the September 3, 2020 Amended Rule 54(b) Final Judgment (**Amended Rule 54(b) Judgment**) entered by the Circuit Court.[2]  The Waiau Parties also challenge two summary judgment orders that were entered against them, and in favor of the three insurance companies, and then reduced to an appealable judgment in the Amended 54(b) Judgment: (1) the September 5, 2019 Order Granting [Defendant-Appellee] General Star Indemnity Company's [(**General Star's**)] Motion for Summary Judgment (Filed 5/30/19) and Defendant[-Appellee] First Insurance Company of Hawaii, Ltd's [(**First Insurance's**)] Substantive Joinder (Filed 5/31/2019) (the **General Star SJ Order**); and (2) the September 5, 2019 Order Granting Defendant-[Appellee] North American Capacity Insurance Company's [(**NACIC's**)] Motion for Summary Judgment and [First Insurance's] Joinder (the **NACIC SJ Order**).  With these orders and judgments, all of the Waiau Parties' claims against First Insurance, General Star, and NACIC were dismissed with prejudice.  The Waiau Parties' claims against Defendant-Appellee Hawaii Employers' Mutual Insurance Company (**HEMIC**), as well as First Insurance's cross-claims against HEMIC, General Star, and NACIC, HEMIC's

---

[1]     The Honorable Melvin H. Fujino presided.

[2]     The Honorable Wendy M. DeWeese presided.

3

cross-claim against First Insurance, and General Star's counterclaim for declaratory relief remain pending before the Circuit Court.

I.    BACKGROUND

    A.    The Underlying Suit

        On November 15, 2013, Amos K. Agliam (**Agliam**), an employee of C&F Trucking, was operating a C&F Trucking tractor and fuel-hauling trailer filled with diesel fuel; when its brakes failed, the tractor-trailer careened off the road, and Agliam was ejected and died.  C&F Trucking is not an entity, but a "dba" and a trade name registered by Frank M. Lawrence (**Frank**).  A claim was made on behalf of Agliam for workers' compensation benefits and benefits were received by Agliam's estate.

        In a separate suit filed on October 31, 2014, the Waiau Parties sued Frank, Claudia Lawrence (**Claudia**), Kevin Lawrence (**Kevin**), Keith Lawrence (**Keith**), and C&F Trucking (together, the **Assignors**) alleging, *inter alia*, that each of the individual Assignors were managing and/or supervisory employees and/or officers and/or directors of C&F Trucking, and that Agliam's death was caused by the wilful and wanton misconduct of each of the Assignors, within the meaning of Hawaii Revised Statutes (**HRS**) § 386-8 (2015).

        The Assignors notified HEMIC, First Insurance, NACIC, but perhaps not General Star, of the underlying lawsuit.[3]  Each of the insurers declined to provide any defense and/or liability/

_____

    [3]    General Star maintains that it did not receive notice of the lawsuit until January 31, 2018, but that issue was not the basis for General Star's motion for summary judgment.

4

indemnity coverage to any of the Assignors regarding the Agliam incident or the underlying lawsuit. The Assignors hired defense counsel at their own expense for a period of time, but after certain discovery was completed, the Assignors eventually entered into an agreement with the Waiau Parties to stipulate to liability as to a single count (Negligent, Wilful, and/or Wanton Misconduct), and to go to binding arbitration on the sole issue of the damages to the Waiau Parties arising from Agliam's death. The parties further agreed that the Assignors would, *inter alia*, assign their rights and claims against the Assignors' insurers to the Waiau Parties and that the Waiau Parties would give the insurers notice of the binding arbitration and an opportunity to appear and dispute the damages. None of the insurers participated in the arbitration. A total of $2,607,528.60 of special and general damages were awarded to the Waiau Parties, and a Final Judgment reflecting that amount was entered on May 9, 2018.

B. <u>The Insurance</u>

At the time of Agliam's death, Frank dba C&F Trucking had in effect with HEMIC an insurance policy that included Employer's Liability Insurance, with bodily injury limits of $1,000,000 per accident. HEMIC admits that it did not defend or indemnify the Assignors in the underlying lawsuit and denies that there was any applicable coverage under the HEMIC policy, specifically raising as a defense, *inter alia*, the terms and conditions under Part Two Employers Liability Insurance of the

policy.  The HEMIC policy does not appear to be in the record on appeal.

At the time of Agliam's death, "C&F Trucking Frank Lawrence DBA" had in effect with First Insurance a Business Auto Policy with liability limits of $300,000 per person and $600,000 per accident.  First Insurance sent a denial letter to Frank dba C&F Trucking, as well as a denial letter to the other Assignors, pursuant to a commercial general liability policy and the Business Auto Policy at issue here.  Of particular relevance to this dispute, First Insurance's Business Auto Policy, Part IV-LIABILITY INSURANCE, includes:[4]

> A.  WE WILL PAY.
>
> 1.  We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.
>
> 2.  We have the right and duty to defend any suit asking for these damages.  However, we have no duty to defend suits for bodily injury or property damage not covered by this policy.  We may investigate and settle any claim or suit as we consider appropriate.  Our payment of the LIABILITY INSURANCE limit ends our duty to defend or settle.
>
> . . . .
>
> C.  WE WILL NOT COVER — EXCLUSIONS.
>
> This insurance does not apply to:
>
> . . . .
>
> 3.  Any obligation of the insured to indemnify another for damages resulting from bodily injury to the insured's employee.  *[This exclusion does not apply to liability assumed by the insured under an insured contract.]*

---

[4]  Subparts C.3. & C.5. of the Business Auto Policy were changed with an Endorsement.  For completeness, we have included the original policy language, with the language added with the Endorsement in brackets and italicized.

> 4. Bodily injury to any fellow employee of the insured arising out of and in the course of his or her employment.
>
> 5. Bodily injury to any employee of the insured arising out of and in the course of his or her employment by the insured. However, this exclusion does not apply to bodily injury to domestic employees not entitled to workers' compensation benefits *[or to liability assumed by the insured under an insured contract]*.

The First Insurance Business Auto Policy also includes what is known as a severability-of-interests provision, which states:

> "Insured" means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. Except with respect to our limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought.

At the time of Agliam's death, Frank dba C&F Trucking had in effect with General Star an Excess Automobile Liability Policy. The Declarations for this policy state that the policy limit is "100% of the difference between $1,000,000 Combined Single Limits and the limits stated in the SCHEDULE OF UNDERLYING INSURANCE." The General Star policy states that except for its own express provisions, "the policy will follow the terms, conditions, agreements, definitions, exclusions and limitations of the **controlling underlying policy**," *i.e.*, First Insurance's Business Auto Policy. The General Star policy expressly states that General Star "will not be obligated to investigate, defend or settle any claim or suit against the insured." The General Star policy further states:

> 7. LOSS PAYABLE
>
> If the amount of the **ultimate net loss** becomes certain either through trial court judgment or **agreed settlement** among the insured, the claimant, or the claimant's legal representative, the underlying insurer and us, then, the insured or underlying

7

> insurer will pay the amount of **ultimate net loss** to the claimant to effect settlement. Upon submission of due proof thereof, **we** will pay on behalf of the insured that part of **ultimate net loss** which is in excess of the **underlying insurance**, or **we** will, upon request of the insured, make such payment to the claimant on behalf of the insured after the **underlying insurers** have paid or have been held legally liable to pay the full amount of their respective limits of liability as stated in the SCHEDULE OF UNDERLYING INSURANCE, subject to **our** Limit of Insurance shown in Item 4. of the Declarations.

At the time of Agliam's death, Frank dba C&F Trucking had in effect with NACIC a Commercial Following Form Excess Liability Policy, with an ultimate net loss limit in excess of the First Insurance and General Star insurance of $4,000,000. Similar to the General Star policy, the NACIC policy states that except to the extent inconsistent with its own limits and provisions, the terms, conditions, agreements, definitions, exclusions, and limitations of the controlling underlying policy are incorporated by reference. The NACIC policy expressly states that NACIC "shall not be obligated to investigate, defend or settle any claim or suit against the insured." The Limits of Liability provision in the NACIC policy includes: "The limits of the Company's liability under this Policy apply only after the underlying insurers have paid or have been held legally liable to pay the full amount of their respective limits of liability as stated in Item 2 of the Declarations[.]"[5]

C. Proceedings Below

On June 19, 2018, the Waiau Parties filed the complaint herein (**Complaint**) against HEMIC, First Insurance, General Star,

_____

[5] This language is modified by provisos concerning aggregate limits and accompanied by terms concerning the nature of the excess liability (Contributing Excess Basis versus Excess of Loss Basis) that have not been addressed by the parties.

and NACIC, seeking (among other things) declaratory relief, and special, general, and punitive damages. The Complaint includes counts for: Declaratory Relief (Count I); Breach of Contract and/or Contractual Warranties (Count II); Negligence and/or Breach of the Covenant of Good Faith and Fair Dealing (Count III); and Punitive Damages (Count IV). The Complaint alleges, variously, that the insurers should have provided a defense to the Assignors and tendered their full policy limits.

Germane to this appeal, on May 15, 2019, NACIC filed a motion for summary judgment on all counts (**NACIC MSJ**), arguing that NACIC had no duty to defend or indemnify the Assignors based on the fact that its policy provided excess coverage over the underlying policies issued by First Insurance and General Star, and the primary insurer First Insurance's policy expressly and unambiguously excludes coverage for bodily injury to an employee or fellow employee of the insured. NACIC argued that it breached no duty to its insureds because the NACIC policy expressly provides that NACIC "shall not be obligated to investigate, defend, or settle any claim or suit against the insured." NACIC further argued that because it did not violate any tort duty, it could not be held liable for punitive damages.

On May 30, 2019, General Star filed a motion for summary judgment on all counts (**General Star MSJ**), arguing that General Star had no duty to defend or indemnify the Assignors based on the fact that its policy provided excess coverage only upon the exhaustion of the limits of the underlying policy issued by First Insurance, and the primary insurer First Insurance's

policy expressly and unambiguously excludes coverage for bodily injury to an employee or fellow employee of the insured. General Star argued it had no duty to defend because its policy is an excess policy, First Insurance's declination of coverage did not trigger any obligation by General Star, and General Star's policy expressly states that it "will not be obligated to investigate, defend or settle any claim or suit . . ." Regarding punitive damages, General Star pointed to the NACIC MSJ.

On May 31, 2019, First Insurance filed [First Insurance's] Substantive Joinder to: (1) [NACIC MSJ]; and (2) [General Star MSJ] (**Substantive Joinder**). In the Substantive Joinder, First Insurance joined both motions to the extent that the First Insurance policy expressly and unambiguously excludes coverage to an employee or fellow employee of the insured. Based on the policy exclusions, First Insurance argued that it did not breach any duty to its insured, and therefore, the Waiau Parties have no claim against it for breach of contract, negligence or bad faith, and there is no basis for an award of punitive damages.

The Waiau Parties filed memoranda in opposition to the insurers' motions and the Substantive Joinder.[6] With respect to the applicability and enforcement of the First Insurance policy exclusions used to preclude coverage, the Waiau Parties agreed

---

[6] In response to First Insurance's Substantive Joinder, in addition to opposing First Insurance's request for relief, the Waiau Parties included a cross-motion for summary judgment against First Insurance. The Waiau Parties similarly included cross-motions for summary judgment with their oppositions to the General Star MSJ and the NACIC MSJ. However, none of the defendants responded to the cross-motions and, while the record is silent, it appears that they may have been procedurally infirm and they were simply abandoned. The Circuit Court entered no ruling on the cross-motions.

that there were no material facts in dispute. They argued that their claims against the Assignors, as co-employees of Agliam, for wilful and wanton conduct, are covered under the First Insurance policy, the policy exclusions are invalid and/or unenforceable, and First Insurance breached its duty to defend and indemnify. With respect to First Insurance's breach of the duty of good faith and fair dealing and punitive damages, the Waiau Parties argued that discovery was incomplete and a continuance should be granted.

As discussed further below, the Waiau Parties pointed to the severability-of-interests clause in the First Insurance policy, and the Hawaiʻi Supreme Court's interpretation of such provisions in Tri-S Corp. v. Western World Ins. Co., 110 Hawaiʻi 473, 135 P.3d 82 (2006), and cases outside Hawaiʻi. The Waiau Parties also argued that Exclusion 4 contravenes Hawaiʻi public policy and that enforcing it would allow First Insurance to provide auto coverage that does not comply with Hawaii's Motor Vehicle Insurance statute, HRS § 431:10C-301 (2019). The Waiau Parties argued that the court should find the employee and/or fellow employee exclusions void and/or unenforceable.

The Waiau Parties relied on, *inter alia*, Hawaiʻi case law regarding an insurer's broad duty to defend when even a remote possibility of coverage exists to argue that summary judgment should be denied to First Insurance on the bad faith and punitive damages issues, and that discovery should be allowed.

The Waiau Parties' arguments in opposition to the NACIC MSJ and the General Star MSJ raised many of the arguments raised

11

against the primary insurer.  In particular, the Waiau Parties argued that the employee and fellow employee exclusions are invalid and unenforceable.  In addition, the Waiau Parties argued that the excess carriers had a duty to defend the Assignors once it became clear that the primary's limits would be exhausted, and the excess carriers further breached their duties of good faith and fair dealing by failing to engage in good faith settlement evaluations, or further discovery was necessary to uncover their conduct and communications with respect to the underlying lawsuit.

Reply memoranda were filed by the excess coverage insurers and a hearing was held on June 18, 2019.  At the conclusion of the parties' arguments, the matters were taken under advisement.  On September 5, 2019, both the General Star SJ Order and the NACIC SJ Order were entered.  Thereafter, General Star filed a motion requesting Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 54(b) certification of the summary judgment orders as final, on the basis that they finally resolved all claims with respect to the commercial automobile insurance policies, and fully resolved the Waiau Parties claims against First Insurance, General Star, and NACIC.  The other parties took no position, the motion for HRCP Rule 54(b) certification was granted, and judgment was entered.

II.  POINTS OF ERROR

The Waiau Parties raise four points of error on appeal, contending that the Circuit Court erred in entering:  (1) the

12

NACIC SJ Order; (2) the General Star SJ Order; (3) the

Substantive Joinder; and (4) the Amended Rule 54(b) Judgment.

III. <u>APPLICABLE STANDARDS OF REVIEW</u>

> On appeal, the grant or denial of summary judgment is reviewed *de novo*.  Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

<u>Carmichael v. Bd. of Land and Nat. Resources</u>, 150 Hawaiʻi 547,

560, 506 P.3d 211, 224 (2022) (citation omitted).

"This court reviews the interpretation of a contract *de

novo*."  <u>Title Guar. Escrow Serv., Inc. v. Wailea Resort Co.</u>, 146

Hawaiʻi 34, 46, 456 P.3d 107, 119 (2019).

> Moreover, because an insurance policy is a contract, insurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended.  Moreover, every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.

<u>Tri-S Corp.</u>, 110 Hawaiʻi at 489, 135 P.3d at 98 (quoting <u>Dairy</u>

<u>Rd. Partners v. Island Ins. Co.</u>, 92 Hawaiʻi 398, 411, 992 P.2d

93, 106 (2000)).  "On the other hand, however, we have long held

that any ambiguities in an insurance contract regarding coverage

are resolved in favor of the insured as against the insurer."

<u>Nautilus Ins. Co. v. Lexington Ins. Co.</u>, 132 Hawaiʻi 283, 293,

321 P.3d 634, 644 (2014).

IV. <u>DISCUSSION</u>

The Hawaiʻi Supreme Court has stated the general

principles of law concerning the interpretation of insurance

policies as follows:

> Insurers have the same rights as individuals to limit their liability and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy. As such, insurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended. Moreover, every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy. Nevertheless, adherence to the plain language and literal meaning of insurance contract provisions is not without limitation. We have acknowledged that because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.

Dairy Rd. Partners, 92 Hawaiʻi at 411-12, 992 P.2d at 106-07 (cleaned up).

These principles guide our analysis of the insurance policies at issue, and the parties' arguments in this case.

A. The First Insurance Business Auto Policy Exclusions

The Waiau Parties argue that the Circuit Court erred in granting summary judgment based on the First Insurance Business Auto Policy exclusions, which state, in relevant part, that the insurance does not apply to:

> 3. Any obligation of the insured to indemnify another for damages resulting from bodily injury to the insured's employee.
>
> 4. Bodily injury to any fellow employee of the insured arising out of and in the course of his or her employment.
>
> 5. Bodily injury to any employee of the insured arising out of and in the course of his or her employment by the insured. However, this exclusion does not apply to bodily injury to domestic employees not entitled to worker's compensation benefits.

Collectively, these three exclusions are considered employee and fellow employee exclusions. The "named insured"

14

under the First Insurance Business Auto Policy is Frank dba C&F Trucking, Agliam's employer. The insurers argue that pursuant to these exclusions, the First Insurance policy expressly and unambiguously excludes coverage for the bodily injury to Agliam as either an employee of Frank dba C&F Trucking or fellow employee of Frank or, assuming *arguendo* they are insured under the policy, the other Assignors.

Plainly, the base rationale supporting such exclusions is that, under the exclusivity provision in Hawaii's workers' compensation statute, HRS § 386-5 (2015),[7] with few exceptions, an injured employee gives up his or her right to recover damages from an employer "in exchange for the certainty of a statutory award for all work-connected injuries." Evanson v. Univ. of Haw., 52 Haw. 595, 598, 483 P.2d 187, 190 (1971). By eliminating coverage that unnecessarily duplicates workers' compensation insurance, an employer can try to lower its insurance expenses.

HRS § 386-8 (2015), which addresses the liability of a third person for a compensable work injury, provides, in relevant part:

> **§ 386-8 Liability of third person.** (a) When a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in some person other than the employer or another employee of the

---

[7]    HRS § 386-5 provides:

> **§ 386-5 Exclusiveness of right to compensation; exception.** The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury, except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought.

employer acting in the course of his employment a legal liability to pay damages on account thereof, the injured employee or his dependents . . . may claim compensation under this chapter and recover damages from such third person.

. . . .

(k) **Another employee of the same employer shall not be relieved of his liability as a third party, if the personal injury is caused by his wilful and wanton misconduct.**

(Emphasis added.)[8]

While HRS § 386-8 extends immunity from suit for simple negligence to an injured worker's co-employee, that immunity does not extend to the wilful and wanton misconduct of a co-employee. See Iddings v. Mee-Lee, 82 Hawai‘i 1, 9, 919 P.2d 263, 271 (1996) (allowing suits between co-employees based upon reckless conduct).

Thus, although Frank's liability as Agliam's employer was prohibited by the workers' compensation statute, the Waiau Parties' fellow employee claims against the Assignors were not otherwise barred by the statute. Accordingly, the First Insurance Business Auto Policy exclusions, if enforced, deny coverage for bodily injury claims that are not subject to liability protections under the workers' compensation statute.

1. *The Severability-of-Interests Clause*

Here, the Waiau Parties point to Frank as being a co-employee of Agliam and argue that, pursuant to the severability-of-interests clause contained in the First Insurance policy, exclusion 3 and exclusion 5 are unenforceable.

In the Circuit Court and on appeal, the Waiau Parties argue that they sued Frank as a "supervisory and/or managing

---

[8]     In 2016, technical, non-substantive amendments were made to HRS § 386-8.  See Act 55 of 2016, § 11.

16

employee and/or officer and/or director of C&F Trucking." In response, NACIC points to the trade name registration application that was submitted with the NACIC MSJ as evidence that Frank was not a managing employee, officer, or director of C&F Trucking, and that the authorities cited by the Waiau Parties concerning severability-of-interests provisions are distinguishable. General Star argues that the severability-of-interests clause is not inconsistent with the application of the employer and employee exclusions because, applying each separately to each insured, as the severability clause requires, the policy still does not provide coverage.

The Waiau Parties argue that this case is like Tri-S Corp., 110 Hawaiʻi 473, 135 P.3d 82 (2006), and applying the principles from Tri-S, Frank should be treated like a fellow employee of Agliam, and not just an employer. The insurers argue that Tri-S does not support the Waiau Parties' argument here.

As in this case, the underlying dispute in Tri-S arose out of the employment-related death of a worker, Charles L. Rapoza, Jr. (**Rapoza**), employed by Tri-S Corporation (**Tri-S**). 110 Hawaiʻi at 477, 13 P.3d at 86. The appeal and cross-appeal in Tri-S were brought by two insurance companies, Western World Insurance Co. (**WWI**) and Travelers Insurance Co. (**Travelers**). Id. Rapoza's estate had sued Karl Milton Taft (**Taft**), the president/chief executive officer, sole shareholder, general manager, and employee of Tri-S, alleging that he was liable in tort as a co-employee under the workers' compensation exclusivity exception found in HRS § 386-8. Id. at 478, 482, 135 P.3d at 87,

17

91. In a separate suit, a trial court initially rejected the claims against Taft on the grounds that he was effectively Rapoza's employer, but the supreme court vacated the summary judgment order in favor of Taft. Id. at 479, 135 P.3d at 88.

Taft tendered his defense to WWI and requested indemnification; WWI refused to provide coverage on the grounds that its commercial general liability (**CGL**) policy did not provide coverage based on the facts alleged in the underlying suit. Id. at 480, 135 P.3d at 89. Taft and Tri-S sued WWI, and the trial court granted summary judgment in their favor, concluding, *inter alia*, that based on the undisputed evidence, Taft was an executive officer of the named insured, he was sued in that capacity, and thus he was an insured under the terms of the policy. Id. at 481, 483, 135 P.3d at 90, 92. WWI filed a third-party complaint against Travelers, alleging that Travelers, not WWI, owed Taft a duty to defend and indemnify under Tri-S's Worker's Compensation and Employment Liability policy issued by Travelers. Id. at 484, 135 P.3d at 93. Taft and Tri-S were granted leave to amend to bring claims against Travelers, too. Id. Ultimately, the trial court granted summary judgment in favor of Tri-S, Taft, and WWI and against Travelers on the grounds that Tri-S had a reasonable expectation of comprehensive coverage, for both workers' compensation benefits under the workers' compensation part, and non-workers' compensation claims under the employers liability part, including for defense and indemnity for the liability of the corporation to Taft for indemnity for the Rapoza estate's wrongful death claims against

Taft. <u>Id.</u> at 486, 135 P.3d at 95. After various stipulations and orders, judgment was entered in favor of Tri-S and Taft and against WWI, and in favor of Tri-S, Taft, and WWI, and against Travelers. <u>Id.</u> at 486, 135 P.3d at 95.

WWI and Travelers both appealed, raising numerous issues. Of relevance here, WWI argued both that Taft was not an insured under the CGL policy and that, even if he was, policy exclusions applied. <u>Id.</u> at 490, 135 P.3d at 99. Unlike the First Insurance policy in the case now before us, the WWI CGL policy in <u>Tri-S</u> provided that the executive officers of Tri-S were insureds, with respect to their duties as executive officers. <u>Id.</u> at 491, 135 P.3d at 100. However, the WWI policy also stated that no employee is an insured for a bodily injury to a co-employee. <u>Id.</u> Interpreting the WWI insurance contract before it, the supreme court concluded that the co-employee exclusion did not apply to executive officers with respect to their executive duties. <u>Id.</u> WWI further argued that even if Taft was an insured under the policy, he was not covered due to the workers' compensation exclusion and the employer's liability for bodily injury arising out of the employment exclusion. <u>Id.</u> at 492, 135 P.3d at 101.[9] Tri-S and Taft argued that Tri-S, not

_____

[9] These exclusions state, in relevant part:

This insurance does not apply to:

. . . .

    d. Workers Compensation and Similar Laws

        Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

(continued...)

19

Taft, was the employer, and therefore neither exclusion applied to Taft. Id. This is where the severability-of-interests clause analysis comes into play.

The supreme court adopted the view of courts holding that, by operation of the severability-of-interests clause, when analyzing the applicability of these exclusions, "'the insured' must be read to mean the party seeking coverage rather than the named insured" or any other insured who could claim coverage. Id. Accordingly, Taft was the insured claiming coverage. Id. Taft was not Rapoza's employer, so the workers' compensation exclusion did not apply. Similarly, because Taft was not Rapoza's employer, the employer's liability for bodily injury arising out of employment exclusion did not apply. Id. at 492-93, 135 P.3d at 101-02. In sum, as an executive officer of Tri-S, Taft was separately insured under the express terms of the WWI CGL policy and, as Taft was not Rapoza's employer, these employer exclusions did not apply. Put another way, as a non-employer additional insured, Taft's interests were so separate and different from those of the named insured, Tri-S, his interest was severable – to be treated as if he had been issued coverage independently from the corporate employer who was the named insured.

_____

⁹(...continued)
      e. Employer's Liability

"Bodily Injury" to:

(1) An employee of the insured arising out of and in the course of:

(a) Employment by the insured[.]

Tri-S, 110 Hawaiʻi at 480, 135 P.3d at 89.

Here, the Waiau Parties nevertheless point to the supreme court's reference to the "multiple, non-mutually exclusive hats" worn by Taft. See id. at 495, 135 P.3d at 104. The Waiau Parties argue that Frank, like Taft in Tri-S, wears many hats and that Frank was sued wearing his co-employee hat, not his employer hat, and therefore the First Insurance Business Auto Policy exclusions 3 and 5 should not apply to Frank. The many hats analysis is contextual. In Tri-S, WWI argued that it was clear that Taft was sued for breach of his duty as a co-employee – which was plainly subject to exclusion under the WWI policy – not as breach of his duty of an executive officer. Id. The supreme court observed that the material facts were not in dispute; rather the legal significance of those facts was contested. Id. The supreme court focused on the seminal Dairy Road Partners holding that only the possibility of coverage must be established for an insured to prevail on summary judgment against an insurer – framing the question as "Was it *possible* that Taft's alleged breach of duty occurred in his capacity as an executive officer?" Id. (quotation marks omitted).[10] WWI did

---

[10]    The Dairy Road Partners case addressed a number of insurance-related issues, but of particular pertinence here is the supreme court's discussion on the insurer's duty to defend, which is excerpted here:

It is well settled that the duty to provide coverage, *i.e.*, the duty to indemnify, and the duty to defend on the part of an insurer are separate and distinct. Moreover, the parties' respective burdens of proof with respect to the duties to indemnify and to defend are also distinct.

With respect to [the insurer's] prayer for a declaration that it has no duty to defend [the insured] pursuant to the policies, [the insurer's] already heavy burden of proof as a movant for summary judgment was significantly augmented.

The obligation to defend is broader than the duty to
(continued...)

21

not show it was impossible for Rapoza's estate to prevail against Taft on the basis that Taft breached his duty as an executive officer – for which he was insured under WWI CGL policy – and therefore, the supreme court concluded that the trial court did not err in granting summary judgment in favor of Tri-S and Taft as to WWI's duty to defend.  Id. at 496, 135 P.3d at 105.

The context of a many hats analysis is somewhat different in this case.  There is at least some evidence in the record that Frank wears more than one hat:  undisputed evidence that Frank dba C&F Trucking was Agliam's employer; and the Waiau Parties' allegations in the underlying suit and evidence including, *inter alia*, an April 9, 2015 letter sent on behalf of First Insurance acknowledging that Agliam was Frank's "fellow employee" (and invoking exclusion 4, as well as exclusion 5). The allegations in Count I of the underlying wrongful death suit include that Frank's wilful and wanton conduct as, *inter alia*, a supervisory and/or managing employee of C&F Trucking caused Agliam's death.  While the insurer defendants in this case

---

[10](...continued)
pay claims and arises wherever there is the mere potential for coverage.  In other words, the duty to defend rests primarily on the possibility that coverage exists.  This possibility may be remote but if it exists, the insurer owes the insured a defense.  All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured.

Accordingly, in connection with the issue of its duty to defend, [the insurer] bore the burden of proving that there was no genuine issue of material fact with respect to whether a possibility existed that [the insured] would incur liability for a claim covered by the policies.  In other words, [the insurer] was required to prove that it would be impossible for the [plaintiffs in the underlying suit] to prevail against [the insured] in the underlying lawsuits on a claim covered by the policies.

Dairy Rd. Partners, 92 Hawaiʻi at 412-13, 992 P.2d at 107-08 (cleaned up).

22

undoubtedly dispute the legal significance of the judgment entered in favor of the Waiau Parties and against Frank and the other Assignors, applying the Dairy Road Partners analysis, it is certainly *possible* that Frank's adjudicated breach of his duties to Agliam could be found to have occurred in a capacity as a fellow employee and *possible* that the claim could be found to be covered under the subject policies.[11]

However, context is not one dimensional. In Tri-S, in his capacity as an executive officer, Taft was an insured under the "WHO IS AN INSURED" terms of the WWI CGL policy issued to Tri-S, with an interest that was separate, independent, and severable from Tri-S's interest.

Here, the First Insurance Business Auto Policy does not insure "officers and directors" of C&F Trucking. Frank does business as C&F Trucking, which is not a separate legal entity. Frank is in fact the employer and only insured person. The policy defines "You" and "Your" as the person or organization shown as the named insured in the declaration (Frank dba C&F Trucking), and states in relevant part:[12]

> D. WHO IS INSURED.
>
> 1. You are an insured for any covered auto.
>
> 2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow with a reasonable belief that such insured is entitled to do so except:
>
>    a. The owner of a covered auto you hire or borrow from one of your employees or a member of his or her household.

---

[11]    This is not to say that all three insurers had a duty to defend in this case, as discussed later further below.

[12]    The lead-in part of D.2. includes policy changes made in an endorsement.

> b.     Someone using a covered auto while he or she is working in a business of selling, servicing, repairing, or parking autos unless that business is yours.
>
> c.     Anyone other than your employees, a lessee or borrower or any of their employees, while moving property to or from a covered auto.
>
> 3.    Anyone liable for conduct of an insured described above is an insured but only to the extent of that liability. . . .

Thus, while the severability-of-interests clause in the First Insurance policy might apply if the issue was whether one of the <u>other</u> persons described in D.2. or D.3. was the insured in question, there is no separate, severable coverage for Frank, who was Agliam's employer.  In other words, the severability-of-interests clause works only when there is a separate, nonemployer insured.  But here, there is no such separate coverage at issue because there is only a single insured, Frank dba C&F Trucking.

For these reasons, we conclude that the Waiau Parties' arguments that exclusions 3 and 5 of the First Insurance Business Auto Policy are unenforceable based on the severability-of-interests clause is without merit.

The Waiau Parties also argue that "bodily injury to any fellow employee" exclusion, exclusion 4 in the First Insurance policy, is rendered inapplicable by the severability-of-interests clause.  Their severability-of-interests argument rests primarily on a Wyoming case, <u>Barnette v. Hartford Ins. Grp.</u>, 653 P.2d 1375 (Wyo. 1982), that was cited favorably by the supreme court in <u>Tri-S</u>.  <u>See</u>, <u>e.g.</u>, <u>Tri-S</u>, 110 Hawaiʻi at 492, 135 P.3d at 101.  This argument is to no avail, however, as the severability-of-interests analysis in <u>Barnette</u> is wholly resonant with our

24

discussion above. In <u>Barnette</u>, Gibson A. Barnette (**Barnette**) sought indemnity from, *inter alia*, The Hartford Insurance Group (**Hartford**) for injuries suffered by a fellow employee of Barnette Enterprises, Inc. (**Barnette Inc.**). 653 P.2d at 1375-76. Barnette was the president of Barnette Inc. <u>Id.</u> at 1376. Under the Hartford policy, "executive officers" of the named insured, Barnette Inc., were also persons insured, and the policy contained a severability-of-interests clause. <u>Id.</u> <u>Barnette</u> does a deep dive into various jurisdictions interpreting cross-employee exclusionary clauses (not all of which are in accord), but ends with the following recap:

> By this addition [of the severability-of-interests clause] the policy clearly intends that the "insured", with whom we are at any given time concerned when applying the cross-employee exclusionary rule, must be held to be the insured seeking protection under the policy. If that insured is an employer whose employees are making a claim against him or her, the cross-employee exclusionary rule serves to preclude coverage. Why? Because such an employer has paid for the protection of those workers through worker's compensation contribution and there is therefore no good purpose to be served by causing him or her to pay for double coverage especially where it furnishes no additional protection given the fact that the injured employee is foreclosed from bringing suit against the contributing employer because of the exclusive remedy provisions of the worker's compensation law.
>
> If, on the other hand, the insured in question is *not* an employer who seeks policy protection from the claims of employees, then the cross-employee exclusionary rule cannot interfere with the coverage of that insured—and why should it? Such an insured has no employer-employee relationship with which to be concerned. He is not one who is obligated to protect employees through either compensation contribution or private insurance. He is just an additional insured as is, for example, an omnibus additional insured for whom the named insured has contracted with its insurance company to furnish protection. Coverage should not be denied to an insured by the cross-employee exclusionary clause of the contract when that clause has no applicability to the insured person seeking protection. Barnette falls within this classification. He is not an employer seeking protection from claims arising out of an injury to his employee and is therefore not precluded by the cross-employee exclusionary clause from coverage by the Hartford policy.

<u>Id.</u> at 1383.

Here, Frank is an employer seeking protection from claims arising out of an injury to his employee. As discussed above, there is no potentially-severable, additional coverage here for Frank in some other capacity. Under the analysis stated in Barnette, coverage was only found to exist because Barnette fell within a category of additional insureds. In sum, we conclude that the Waiau Parties' argument that exclusion 4 of the First Insurance Business Auto Policy is unenforceable based on the severability-of-interests clause is without merit.

2.    *Hawaii Motor Vehicle Insurance Law*

The Waiau Parties further argue that exclusion 4 (the fellow employee exclusion) contravenes Hawaiʻi public policy because it would allow First Insurance to provide an auto policy not in compliance with Hawaii's statutory insurance requirements. This issue is unsettled in Hawaiʻi.

We reiterate the principle that "liability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy." First Ins. Co. of Haw. v. State, 66 Haw. 413, 423, 665 P.2d 648, 655 (1983) (citation omitted).

The Waiau Parties argue that enforcing exclusion 4 would allow First Insurance to provide a motor vehicle insurance policy not in compliance with the Hawaii Motor Vehicle Insurance Act, citing HRS § 431:10C-301 (2019), which provides, in pertinent part:

> **§ 431:10C-301  Required motor vehicle policy coverage.**
> (a)  An insurance policy covering a motor vehicle shall provide:

26

> (1) Coverage specified in section 431:10C-304 [personal injury protection benefits]; and
>
> (2) <u>Insurance to pay on behalf of the owner</u> or any operator of the insured motor vehicle using the motor vehicle with a reasonable belief that the person is entitled to operate the motor vehicle, <u>sums which the owner or operator may legally be obligated to pay for injury, death</u>, or damage to property of others, except property owned by, being transported by, or in the charge of the insured, <u>which arise out of the ownership, operation, maintenance, or use of the motor vehicle</u>; . . .
>
> (b) A motor vehicle insurance policy shall include:
>
> (1) Liability coverage of <u>not less than</u> $20,000 per person, with an aggregate limit of $40,000 per accident, for all damages arising out of accidental harm sustained as a result of any one accident and arising out of ownership, maintenance, use, loading, or unloading of a motor vehicle[.]

(Emphasis added).

HRS § 431:10C-120(a) (2019) states:

> **§ 431:10C-120  Prohibitions, penalty.**  (a) No insurer shall issue or offer to issue any policy which the insurer represents is a motor vehicle insurance policy unless such insurer meets the requirements of this article.

Accordingly, under HRS §§ 431:10C-120(a) and 431:10C-301(a) & (b), *all* insurance policies covering motor vehicles in this state *must* provide insurance, to pay on behalf of the owner of an insured vehicle, sums which the owner may be obligated to pay for injury or death arising out of the ownership, operation, maintenance or use of the motor vehicle, including liability coverage of *not less than* the statutory minimums.

None of the insurers in this case deny that the First Insurance Business Auto Policy is a motor vehicle insurance policy. None of the insurers contend that the First Insurance Business Auto Policy provides the coverage set forth in HRS § 431:10C-301(a)(2) and (b)(1). None of the insurers dispute that the Waiau Parties, as assignees of vehicle owner Frank dba

27

C&F Trucking, are claiming that First Insurance must pay sums which Frank may be legally obligated to pay for the death of Agliam, which arise out of the ownership, operation, maintenance, or use of the motor vehicle.

Rather, in the first instance, First Insurance ignores the Waiau Parties' reference to HRS § 431:10C-301 and argues that the Waiau Parties failed to cite to a specific Hawaiʻi law or statute that was violated, *i.e.*, that no statutory inhibition or public policy was violated.  First Insurance then argues that public policy supports the employee and fellow employee exclusions in the First Insurance Business Auto policy because those were meant to exclude claims covered by workers' compensation coverage.  The fly in this ointment is, of course, that workers' compensation insurance appears only to have provided coverage to Frank in his capacity as employer, but not to defend against plaintiffs who claimed he was also a fellow employee, and appears not to have provided any coverage for the fellow employee claims against the other Assignors.[13]  Thus, Frank and the other Assignors were left with no defense, let alone an indemnity, when the Waiau Parties sued them in the underlying lawsuit.

First Insurance further argues on appeal that the exclusions at issue here serve a valid purpose, which is to lower the costs of insurance, and that the Waiau Parties are improperly

_____

[13]     We say "appears" because the HEMIC workers' compensation and employer's liability policy is not in the record on appeal and the Waiau Parties' claims against HEMIC remain pending.  However, it is clear from the record before us – specifically including HEMIC's Answer to the Complaint – that HEMIC denied that there was any applicable coverage under the HEMIC policy and declined to defend Frank and the other Assignors in the underlying lawsuit.

seeking a "dual recovery." Lowering the costs of insurance premiums is a worthy purpose, but that consideration alone is not determinative here. There is no support in the record for First Insurance's argument concerning a dual recovery; indeed, First Insurance's only argument in its Substantive Joinder was that its Business Auto Policy expressly and unambiguously excludes coverage for bodily injury to an employee or fellow employee of the insured, and therefore it was entitled to summary judgment on all counts.

General Star argues that the fellow employee exclusion, as incorporated into its policy, is not inconsistent with HRS § 431:10C-301 because Hawaii's compulsory motor vehicle insurance statute does not require unlimited coverage, and since General Star's policy does not attach until exhaustion of the underlying limits that satisfy the required amount of compulsory motor vehicle insurance coverage, it is impossible for an exclusion in the General Star policy to be inconsistent with the statute. In briefing, General Star admits that public policy requires coverage, just not under their excess motor vehicle insurance policy – arguing, "because the General Star policy attaches well in excess of the $20,000/$40,000 coverage mandated by Hawaii's statute, exclusions in the General Star policy cannot possibly violate Hawaii's public policy that requires such coverage."

General Star's construction of the issue is not persuasive. The question of whether or not the exclusions in First Insurance's policy are inconsistent with § 431:10C-301 is not, in the first instance, dictated by whether or not the excess

coverage is triggered.  Notably, HRS § 431:10C-301(b)(1) provides a floor for coverage ("not less than"), and not a specific mandated amount of coverage.  General Star argues that the remedy for any failure to comply with the statute is to read the minimum coverage amounts into First Insurance's policy, and points to a Maryland case as supporting its argument.

In Nationwide Mut. Ins. Co. v. Wilson, 893 A.2d 1177, 1188 (Md. Ct. Spec. App. 2006), aff'd sub nom., Wilson v. Nationwide Mut. Ins. Co., 910 A.2d 1122 (Md. Ct. App. 2006), the appellate court did in fact uphold the validity of the fellow employee exclusion in the subject auto insurance policy.  It did so, however, because the exclusion was expressly modified by: "this exclusion does not apply for coverage up to the minimum limit specified by the Maryland Vehicle Law." Id. at 1180.  The Maryland court explained that it previously had declared invalid and void certain exclusions in automobile insurance policies that effectively excluded all liability coverage as against public policy.  Id. at 1183.  However, the court concluded that a fellow employee exclusion in a commercial auto policy that expressly provided for only the statutory minimum coverage was not invalid because it complied with the Maryland Vehicle Law, but allowed an employer to minimize the costs associated with providing for coverage under that statute as well as workers' compensation benefits.  Id. at 1188-89.[14]  In the instant case, the First

_____

[14]    The Maryland special appeals court did discuss another case in which the court concluded that a household exclusion was void as to public policy only to the extent that it denied mandatory minimum coverage.  See Nationwide Mut. Ins. Co., 893 A.2d at 1188 (discussing State Farm Mut. Auto Ins. Co. v. Nationwide Mut. Ins. Co., 516 A.2d 586 (Md. App. 1986)).  However,
(continued...)

30

Insurance Business Auto Policy exclusions have no provision for coverage up to the statutory minimum.

NACIC argues that several jurisdictions have found similar exclusions in commercial auto insurance policies to be consistent with state motor vehicle insurance laws and workers' compensation statutes. We have examined these cases. <u>Canal Ins. Co. v. Nix</u>, 7 P.3d 1038, 1040-42 (Colo. App. 1999), involved claims of an injured employee against his employer, not a fellow employee, and the court's decision rested on the specific language of Colorado's Workers' Compensation Act, which provided immunity to employers who obtained the required insurance, and the Colorado Motor Vehicle ("No-Fault") Insurance law in effect at that time, which has since been repealed. <u>See</u> Colo. Rev. Stat. §§ 10-4-701 to 10-4-726, repealed eff. July 1, 2003. In <u>Helms v. Southern Farm Bureau Cas. Ins. Co.</u>, 664 S.W.2d 870, 871-72 (Ark. 1984), the Arkansas Supreme Court declined to invalidate an employee exclusion on the grounds that Arkansas's Workers' Compensation Commission had exclusive jurisdiction, mainly because of the exclusivity of workers' compensation benefits and Arkansas precedent holding that it is in the public interest to

---

[14](...continued)
the court also recognized that in <u>Larimore v. American Ins. Co.</u>, 552 A.2d 889, 892-93 (Md. App. 1989), the Maryland Court of Appeals rejected the notion that a collateral source of payments through workers' compensation justified upholding a fellow employee exclusion in an automobile insurance policy and held the exclusion to be invalid. The Court of Appeals noted, *inter alia*, that the injured fellow employee may not receive workers' compensation benefits equal to his actual tort damages and that upholding a fellow employee exclusion could end up excluding a large class of claimants, significantly frustrating the purpose of the compulsory automobile liability insurance law. <u>Id.</u> at 892. The court recognized other cases that had upheld fellow employee exclusions, but noted distinctions including a lack of compulsory liability law, an express statutory authorization for the exclusion, or a workers' compensation law that prohibits fellow employee tort actions. <u>Id.</u> at 892-93 (citations omitted).

give the Workers' Compensation Act priority over other statutes as providing an exclusive remedy.  In Boecker v. Great West Cas. Co., 361 N.W.2d 160, 162-63 (Minn. Ct. App. 1985), the Court of Appeals of Minnesota upheld the validity of employee exclusions in a no-fault policy, but those exclusions had previously been written into a Minnesota law that was replaced by a no-fault law that specifically allowed, *inter alia*, exclusions.  It nevertheless appears from that case that Minnesota tends to uphold employee exclusions for various reasons.  Id.  In Zink v. Allis, 650 S.W.2d 320 (Mo. Ct. App. 1983), in response to a somewhat convoluted claim seeking uninsured motorist coverage, the Missouri Court of Appeals affirmed that the fellow employee exclusion is recognized in Missouri as a rational exclusion because it "distinguish[es] the employer's liability to his employees from that of his liability to the general public, thereby relieving the employer of the onerous requirement of insuring his employees under his public liability insurance policy, such employees being already protected by the workmen's compensation statutes."  Id. at 323-24 (citation omitted).

        None of these cases are dispositive because the issue raised here is whether the denial of coverage pursuant to fellow employee exclusion is consistent with Hawai'i public policy, as expressed in HRS §§ 431:10C-120 and 431:10C-301(a) & (b) of the Hawai'i Motor Vehicle Insurance statute.  Indeed, none of these cases discuss a statutory scheme with the clear mandate of HRS § 431:10C-120 to insurers:  "No insurer shall issue or offer to issue any policy which the insurer represents is a motor vehicle

32

insurance policy unless such insurer meets the requirements of this article."  Moreover, Hawai'i law authorizes an injured employee to receive workers' compensation benefits and pursue claims against third-parties, including fellow employees, based on wilful and wanton misconduct.  See HRS § 386-8; Iddings, 82 Hawai'i at 6-9, 919 P.2d at 268-71.[15]

That said, prior to attempting to resolve the Hawai'i public policy issues, we return to the provisions of the First Insurance Business Auto Policy.

3.    *The Conflict of Provisions Term*[16]

The First Insurance Business Auto Policy includes a Conflict of Provisions term that states:

CONFLICT OF PROVISIONS

In the event that there is a conflict between the provisions of this policy or endorsements attached and the Hawaii Motor Vehicle Insurance Law, such law shall take precedence over the provisions of the policy or endorsements.

If the employee and fellow employee exclusions relied on by the insurers are enforced, the First Insurance Business Auto Policy at issue in this case does not provide the coverage set forth in HRS § 431:10C-301(a)(2) & (b)(1).  The threshold question is whether this is a conflict.

NACIC argues that there is no conflict because the exclusion for bodily injury to an insured's employee is

_____

[15]    HRS § 386-8(d) further provides for the subrogation and reimbursement of workers' compensation benefits when an injured employee recovers damages from a third-party.

[16]    The issues arising from the Conflicts of Provisions term were not addressed in the initial briefing.  Therefore, pursuant to Hawaii Rules of Appellate Procedure Rule 28(b)(4), this court entered an Order on October 4, 2024, allowing the parties to file supplemental briefs.  Supplemental briefs addressing the Conflicts of Provision term were submitted by the Waiau Parties, First Insurance, and NACIC, but not General Star.

consistent with *the public policy purposes* behind both the Hawaiʻi Motor Vehicle Insurance statute and the Hawaiʻi Workers' Compensation Law.  NACIC submits that the two compensation schemes are designed to complement, rather than duplicate, each other.  First Insurance also argues that the Conflict of Provisions term is inapplicable because the policy exclusions do not conflict with HRS § 431:10C-301.  First Insurance emphasizes that if First Insurance's fellow employee exclusion is held to conflict with the Motor Vehicle Insurance statute, then every insurance policy exclusion will similarly be in conflict with the law, which will have the unintended consequence of driving up costs.

First Insurance points to Budget Rent-A-Car Sys., Inc. v. Coffin, 82 Hawaiʻi 351, 922 P.2d 964 (1996), to support the proposition that HRS § 431:10C-301(a)(2) & (b)(1) does not mandate that all motor vehicles must be covered by insurance at all times arising out of the ownership, maintenance, or use of the motor vehicle.  However, that is not exactly the holding in Coffin.  The issue in Coffin was not whether an insurance policy provision was void as against public policy; rather, the issue was whether a use limitation provision in Budget's rental agreement (a prohibition against driving the rental vehicle on a particular public road) was void as against public policy because it impermissibly cut into the requirements of the Hawaiʻi Motor Vehicle Law.  Id. at 353-54, 922 P.2d at 966-67.  Budget successfully argued to the supreme court that the use limitation provision was a proper exercise of its right to limit the

permission granted to Coffin with respect to Coffin's use of the vehicle.  Id. at 354, 922 P.2d at 967.  The supreme court interpreted HRS § 431:10C-104 and 431:10C-105 – the provisions relied on by Coffin – and held that HRS § 431:10C-104 contains a mandate to all owners of motor vehicles to maintain a no-fault policy, not a mandate to insurance companies to provide coverage for every accident that occurs on a public street, road, or highway.  Id. at 355, 922 P.2d at 968.  The supreme court further held that the use limitation provision did not implicate issues of minimum insurance requirements because it was a proper exercise of Budget's authority to restrict the use of its rental vehicles.  Id. at 356, 922 P.2d at 969.  To ensure clarity as to the intended limits of its holding, the supreme court stated, "[i]t is important to stress that our holding in the present case is limited exclusively to the permissive use context."  Id. at 357, 922 P.2d at 970.

Notwithstanding the arguments pressed by the insurers, we conclude that if the employee and fellow employee exclusions in the First Insurance Business Auto Policy are enforced, the policy does not provide the coverage mandated in HRS § 431:10C-301(a)(2) & (b)(1), which constitutes a conflict between the policy exclusions and the statute.  Accordingly, pursuant to the Conflict of Provisions term, HRS § 431:10C-301(a)(2) & (b)(1) "shall take precedence over" the employee and fellow employee exclusions.

It is unclear what it means for the statute to "take precedence" over the conflicting exclusions, *i.e.,* what the

35

remedy is if they conflict. Without waiving their arguments that there is no conflict, the insurers argue that the remedy would be to read into the policy the "statutory minimum" set forth in HRS § 431:10C-301(b)(1). In support, NACIC cites Canal Ins. Co. v. Merritt, 683 F. Supp. 1296 (W.D. Mo. 1988), Merchants Mut. Cas. Co. v. Tuttle, 101 A.2d 262, 266 (N.H. 1953), and Wilson, 910 A.2d 1122; First Insurance cites Tuttle, as well. The Waiau Parties point to Hawaii's "long standing history" of voiding provisions that are in conflict with Hawaii's motor vehicle insurance statutes, referencing Dawes v. First Ins. Co. of Haw., Ltd., 77 Hawai'i 117, 883 P.2d 38 (1994), and the other Hawai'i cases cited therein.

Of more than passing interest here, the starting point of the analysis in Merritt is that because of the mandate of the Kansas Automobile Injury Reparations Act in effect at the time, the federal court had previously invalidated the subject employee exclusion provisions, which accorded the plaintiff some amount of coverage pursuant to the public policy expressed in the Act. 683 F. Supp. at 1296-97. Based on a Kansas Supreme Court case, DeWitt v. Young, 625 P.2d 478 (Kan. 1981), the Merritt court held that the invalidated employee exclusions were void only as to the minimum coverage under the Act, because that was the amount necessary to effect the public policy reflected in the Act, notwithstanding the policy limits in the insurance contract. 683 F. Supp. at 1296-97.[17]

---

[17]    In DeWitt, the Kansas Supreme Court held that a garage shop exclusion was void and unenforceable because it was contrary to Kansas insurance law requiring coverage for all permissive drivers, but concluded

(continued...)

In Tuttle, the New Hampshire Supreme Court held that a fellow employee exclusion was "ineffective to defeat or avoid coverage" as to the minimum limits of liability required under New Hampshire law because, *inter alia*, the subject insurance policy included an endorsement that stated "all policy provisions required by [the law] are hereby incorporated by reference." 101 A.2d at 265. The court concluded that the policy otherwise set out permissible exclusions and limits. Id. at 266.[18]

As discussed above, in Wilson, the fellow employee exclusion was expressly limited to excluding coverage above the minimum required under the applicable motor vehicle law. 893 A.2d at 1180. Thus, the insurance policy itself made clear that statutorily-mandated coverage would be provided, notwithstanding the exclusion.

In Dawes, the Hawaiʻi Supreme Court reiterated "the longstanding propositions . . . that liability insurers may not limit their liability in contravention of statutory inhibitions or public policy, and that when the terms of an insurance contract are in conflict with statutory language, the statute must take precedence over the terms of the contract." 77 Hawaiʻi

---

[17](...continued)
that the exclusion was valid as to amounts exceeding the statutorily-required coverage. 625 P.2d at 482-83. The court "caution[ed] that the limited application of such exclusions should be clearly and specifically set forth in the policy." Id. at 483.

[18] Years later, in 1978, New Hampshire amended that state's workers' compensation law to bar negligence claims against fellow employees; in 1983, New Hampshire again amended the statute to only allow claims for intentional torts against fellow employees; but in 1985, the New Hampshire Supreme Court held those provisions to be unconstitutional under the New Hampshire Constitution. See Estabrook v. American Hoist & Derrick, Inc., 498 A.2d 741 (N.H. 1985). The New Hampshire Supreme Court subsequently had a change of heart and overruled Estabrook, holding that the statute "now controls and expressly provides employees immunity from non-intentional tort claims brought by co-employees." Thompson v. Forest, 614 A.2d 1064, 1067 (N.H. 1992).

at 128, 883 P.2d at 49 (cleaned up).  The supreme court noted that the uninsured motorist (**UM**) coverage in the First Insurance policy at issue contained five provisions that had been previously voided "as being in contravention of statutory inhibitions or public policy."  Id.  The court commented "[s]uch, apparently, is the deference that [First Insurance] accords the law of this state when it comes to issuing auto policies consonant therewith."  Id. at 129, 883 P.2d at 50.  The supreme court ultimately reaffirmed, *inter alia*, that insurance policies with UM provisions that attempt to restrict the applicability of UM statutes are void.  Id. at 131, 883 P.2d at 52.

In a later case, the supreme court held that in underinsured motorist (**UIM**) policies, clauses that require an insured to exhaust the tortfeasor's insurance prior to seeking UIM benefits are void as against public policy.  Taylor v. Gov't Emps. Ins. Co., 90 Hawaiʻi 302, 312, 978 P.2d 740, 750 (1999).

Hawaiʻi courts have repeatedly voided policy provisions that conflict with statutory requirements and the public policy reflected in the various enactments of Hawaii's no fault and motor vehicle insurance law.  The cases do not, however, specifically address the proper remedy where the policy itself states that the statute takes precedence.

We conclude that the Conflict of Provisions term is ambiguous with respect to how it is to be applied when a conflict arises, because it is reasonably susceptible to more than one interpretation.  See Found. Int'l, Inc. v. E.T. Ige Constr., Inc., 102 Hawaiʻi 487, 496-97, 78 P.3d 23, 32-33 (2003)

(determination of ambiguity of a contract term is a question of law, whether based on the document itself, there is uncertainty or doubt as to meaning). As stated above, "because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." Dairy Rd. Partners, 92 Hawai‘i at 411-12, 992 P.2d at 106-07 (cleaned up). "[P]olicies are to be construed in accord with the reasonable expectations of a layperson." Id. at 412, 992 P.2d at 107.

HRS § 431:10C-301(b) sets a floor, not a ceiling, for coverage, requiring all insurers who issue a motor vehicle insurance policy to include "[l]iability coverage of not less than $20,000 per person . . . for all damages arising out of accidental harm sustained as a result of any one accident and arising out of ownership, maintenance, use, loading, or unloading of a motor vehicle[.]" (Emphasis added). Resolving all ambiguities against the insurer, it is reasonable for the layperson insured to expect that if the policy exclusions are unenforceable with respect to this statutorily-mandated coverage, the liability coverage would be in the amount stated in the motor vehicle insurance policy. That is the amount of liability coverage that was offered by the insurer, purchased by the insured, and reflected in the policy documents, not the statutory minimum, which is referenced nowhere in the First Insurance

Business Auto Policy.  In this light, we consider the Circuit Court's grant of summary judgment in favor of all three insurers.

    B.    <u>Disposition of the Summary Judgment Orders</u>

        1.    *Summary Judgment in Favor of First Insurance*

First Insurance, Frank's primary motor vehicle insurer, filed the Substantive Joinder, arguing that based on the employee and fellow employee exclusions, it did not breach any duty to its insured, and thus it was entitled to summary judgment against the Waiau Parties on all counts alleged against First Insurance in the Complaint.  The Circuit Court granted summary judgment to First Insurance.

As stated above, the First Insurance Business Auto Policy includes:

> PART IV-LIABILITY INSURANCE
>
> A.    WE WILL PAY.
>
>     1.    We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.
>
>     2.    We have the right and duty to defend any suit asking for these damages.  However, we have no duty to defend suits for bodily injury or property damage not covered by this policy.  We may investigate and settle any claim or suit as we consider appropriate.  Our payment of the LIABILITY INSURANCE limit ends our duty to defend or settle.

Thus, under the First Insurance Business Auto Policy, First Insurance had a duty to defend Frank, as well as provide liability coverage, absent the exclusions, which are unenforceable due to the conflict with the Hawaiʻi Motor Vehicle Insurance statute.  Accordingly, the Circuit Court erred in granting summary judgment in favor of First Insurance on Count I (Declaratory Relief) and Count II (Breach of Contract).

The Waiau Parties further argue that the Circuit Court erred in granting summary judgment in favor of First Insurance on Count III (Negligence and/or Breach of the Covenant of Good Faith and Fair Dealing) and Count IV (Punitive Damages).  In the Substantive Joinder, First Insurance simply argued that based on the policy exclusions, it did not breach any duty to its insured, and thus the Waiau Parties have no claim for negligence or bad faith, and accordingly no claims upon which punitive damages may be awarded.  In light of our conclusion that the employee and fellow employee exclusions are unenforceable, and there being no other grounds presented upon which the Circuit Court could grant summary judgment, we conclude that the Circuit Court erred in granting summary judgment in favor of First Insurance on Counts III and IV.

2.    *Summary Judgment in Favor of General Star*

In the General Star MSJ, General Star argued, *inter alia*, that under the express terms of the General Star policy, it had no duty to defend the Assignors in the underlying suit.  In opposition to the General Star MSJ, the Waiau Parties made no argument and offered no evidence to the contrary.  Section II of General Star's Excess Automobile Liability Policy states, *inter alia*, that "[General Star] will not be obligated to investigate, defend or settle any claim or suit against the insured[.]"  We conclude that the Circuit Court did not err in granting summary judgment in favor of General Star on Count I (Declaratory Relief) and Count II (Breach of Contract) with respect to any obligation to defend the Assignors in the underlying suit.

General Star further argued to the Circuit Court that it had no duty to indemnify the Assignors because its policy only affords coverage upon the exhaustion of the limits of liability under the First Insurance Business Auto Policy, and the incorporation of the First Insurance employee and fellow employee exclusions into the General Star policy bars coverage for the Waiau Parties' claims. Section I of the General Star policy states, *inter alia*, that General Star "will pay on behalf of the insured **ultimate net loss** in excess of the total of the limits of the **underlying insurance**," *i.e.*, the First Insurance Business Auto Policy. In opposition to the General Star MSJ, the Waiau Parties argued that the employee and fellow employee exclusions were invalid and unenforceable, but they made no argument and offered no evidence contesting that General Star's duty of indemnification did not arise until the limits of the First Insurance policy were exhausted. We conclude that the Circuit Court did not err in granting summary judgment in favor of General Star on Count I (Declaratory Relief) and Count II (Breach of Contract) with respect to a then-existing contractual obligation to indemnify Frank in the underlying suit. However, in light of our ruling with respect to the Waiau Parties' claims against First Insurance, a declaratory or prospective ruling that General Star has no duty whatsoever arising out of Agliam's death to pay on behalf of Frank is premature. Thus, we vacate the entry of summary judgment in favor of General Star on Count I (Declaratory Relief) and Count II (Breach of Contract) to the extent that it barred any duties that might arise under the

General Star Excess Automobile Liability Policy in light of our ruling that First Insurance had a duty to defend and indemnify Frank in the underlying suit.

We further conclude that the General Star Excess Automobile Liability Policy is ambiguous with respect to the incorporation of the First Insurance employee and fellow employee exclusions. This ambiguity is pertinent in light of our conclusion that the exclusions are unenforceable with respect to the underlying policy. With respect to the application of the underlying policy terms, the General Star policy states:

> Except for the express provision of this policy and its attached endorsements, this policy will follow the terms, conditions, agreements, definitions, exclusions and limitations of the [First Insurance] policy. Should there be a conflict between the provisions of this policy, including any of its attached endorsements, and the [First Insurance] policy, then the provisions of this policy and its endorsements will govern.

(Emphasis omitted).

On the one hand, the proviso that "this policy will follow the . . . exclusions" could be read to incorporate the exclusions into the General Star policy regardless of the enforceability of the exclusions with respect to the First Insurance policy. On the other hand, this language could be interpreted to apply the exclusions as they apply with respect to the First Insurance policy. As discussed above, this language must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer. See Dairy Rd. Partners, 92 Hawai'i at 411-12, 992 P.2d at 106-07. Accordingly, we conclude that the employee and fellow employee exclusions in the First Insurance policy do not operate as a bar to excess liability coverage under the General Star policy.

43

With respect to Counts III and IV, in the General Star MSJ, General Star argued that under the express terms of its policy, General Star had no obligation to defend or settle the underlying suit, and therefore it was entitled to summary judgment on the Waiau Parties' remaining claims. In opposition, the Waiau Parties argued that both excess carriers acknowledged that punitive damages are available when it can be established that a "defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences," citing Best Place, Inc. v. Penn Am. Ins. Co., 82 Hawaiʻi 120, 134, 920 P.2d 334, 348 (1996).

Thus, General Star's argument on summary judgment regarding bad faith was entirely premised on the language of the insurance policies and did not otherwise address its conduct in its dealings with the Assignors with respect to claims brought against them in the underlying suit. General Star did address the fact that the implied covenant of good faith and fair dealing can be breached *even if* the insurer alleges that it adhered to the express terms of its policy. See id. at 132, 920 P.2d at 346 ("The breach of the express covenant to pay claims, however, is not the *sine qua non* for an action for breach of the implied covenant of good faith and fair dealing."). The insurer's duty to act in good faith in dealing with its insured includes the duty to handle and pay claims in good faith, and a breach of the

44

duty to act in good faith gives rise to an independent tort cause of action. See Hough v. Pacific Ins. Co., 83 Hawaiʻi 457, 468-69, 927 P.2d 858, 869-70 (1996) (citations omitted). Clearly, "conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith." Id. at 469, 927 P.2d at 870 (citing, *inter alia*, Best Place, 82 Hawaiʻi at 133, 920 P.2d at 347). As General Star presented no evidence, or even argument, concerning the *reasonableness* of its conduct, we cannot conclude that it demonstrated that the Waiau Parties will be unable to carry their burden at trial. See, e.g., Jardine v. State, 155 Hawaiʻi 60, 75, 556 P.3d 406, 421 (2024) (citation omitted) (summary judgment movant may satisfy burden by presenting evidence negating an element of the opposing party's claim or demonstrating that the claimant will be unable to carry its burden at trial).

The Waiau Parties further argued that the Circuit Court abused its discretion when it denied a request for a continuance pursuant to HRCP Rule 56(f).

HRCP Rule 56(f) provides:

> **(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Here, the Waiau Parties further argue that they requested a continuance to permit depositions and further discovery with respect to their bad faith claims because they anticipated they would be able to demonstrate that General Star acquiesced to First Insurance's bad faith denial of coverage or

even ratified the bad faith interpretation of the First Insurance policy. The Waiau Parties failed to provide an affidavit supporting this request. Nevertheless, in <u>Ralston v. Yim</u>, the supreme court rejected the proposition that summary judgment may be appropriate before a discovery deadline if the nonmovant had "adequate time to conduct discovery and to identify experts." 129 Hawaiʻi 46, 62-63, 292 P.3d 1276, 1292-93 (2013). The court stated that such an approach would be inconsistent with <u>French v. Hawaiʻi Pizza Hut, Inc.</u>, 105 Hawaiʻi 462, 99 P.3d 1046 (2004), as "the clear import of <u>French</u> is that summary judgment should not be granted when there is still time for the non-movant to develop evidence for use at trial, unless there is a basis for concluding . . . that such an effort would be futile." <u>Ralston</u>, 129 Hawaiʻi at 63, 292 P.3d at 1293. The supreme court further stated that HRCP Rule 56(f) provides non-movants with protection against a premature grant of a motion for summary judgment. <u>Id.</u> The court emphasized that:

> The purpose of subdivision (f) is to provide an additional safeguard against an improvident or premature grant of summary judgment and the rule generally has been applied to achieve that objective. Consistent with this purpose, courts have stated that technical rulings have no place under the subdivision and that it should be applied with a spirit of liberality.

<u>Id.</u> (citing 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, <u>Federal Practice and Procedure Civil 3d</u> § 2740, at 402 (1998)).

Thus, even if General Star's argument could be construed as addressing the reasonableness of its conduct, applying HRCP Rule 56(f) with a spirit of liberality here, we conclude that the Waiau Parties should have been granted a

continuance to complete discovery related to its bad faith claims, including whether General Star unreasonably interpreted its policy or otherwise acted in bad faith with respect to, *inter alia*, its refusal to participate in settlement discussions in light of the claims in excess of First Insurance's policy limits.

For these reasons, except as otherwise stated above, we conclude that the Circuit Court erred in granting summary judgment in favor of General Star.

3.      *Summary Judgment in Favor of NACIC*

In the NACIC MSJ, NACIC argued, *inter alia*, that under the express terms of the NACIC Commercial Following Form Excess Liability Policy, it had no duty to defend the Assignors in the underlying suit.  In opposition, the Waiau Parties pointed to no contractual obligation in the NACIC policy requiring a defense, but posited that a duty to defend might nevertheless arise once the excess carrier understood that the underlying policy would be exhausted.  Like Section II of General Star's policy, Section III of NACIC's policy states, *inter alia*, that [NACIC] shall not be obligated to investigate, defend or settle any claim or suit against the insured[.]"  Based on the unambiguous language of the NACIC policy, we conclude that the Circuit Court did not err in granting summary judgment in favor of NACIC on Count I (Declaratory Relief) and Count II (Breach of Contract) with respect to any obligation to defend the Assignors in the underlying suit.

NACIC further argued that as a following form excess policy, the NACIC policy incorporated the employee and fellow

employee exclusions, and thus NACIC has no duty to indemnify the insureds for any liability to the Waiau Parties.  Consistent with our analysis of General Star's similar argument, in light of our ruling with respect to the Waiau Parties' claims against First Insurance, we conclude that the NACIC policy is ambiguous with respect to the incorporation of the First Insurance employee and fellow employee exclusions.  This ambiguity is pertinent in light of our conclusion that the exclusions are unenforceable with respect to the underlying policy.  With respect to the application of the underlying policy terms, the NACIC policy states:

> Except for the limits of liability and any provisions in the underlying insurance policy which are inconsistent with this Policy, including any endorsements attached hereto, the terms, conditions, agreements, definitions, exclusions and limitations of the [First Insurance] policy are incorporated by reference as a part of this Policy.

Although the NACIC policy states that it "incorporate[s]" the exclusions by reference, which differs slightly from the "will follow" language in the General Star policy, the NACIC policy is equally ambiguous concerning whether an exclusion that is unenforceable in the First Insurance policy becomes enforceable when incorporated into the excess policy written by NACIC.  Thus, we construe this language liberally in favor of the insured and resolve the ambiguities against the insurer.  See Dairy Rd. Partners, 92 Hawaiʻi at 411-12, 992 P.2d at 106-07.  Accordingly, we conclude that the employee and fellow employee exclusions in the First Insurance policy do not operate as a bar to excess liability coverage under the NACIC policy.

With respect to Counts III and IV, NACIC argued that the Waiau Parties' claims are predicated on allegations that NACIC failed to timely defend and/or settle the claims against the insured, and based on the incorporated exclusions, NACIC is entitled to summary judgment. NACIC further argued that punitive damages against it are not recoverable because it could not have acted wantonly, oppressively, maliciously, or even recklessly in refusing to do something that neither its contract nor the law requires. In opposition to the NACIC MSJ, on this point, the Waiau Parties argued that the three insurers left the Assignors with no defense and no choice but to stipulate to liability and submit to the arbitration on damages only.

Like General Star, NACIC presented no evidence, or even argument, concerning the *reasonableness* of its conduct, relying instead on its interpretation of the language of the insurance contract to support its request for summary judgment. Thus, we cannot conclude that NACIC demonstrated that the Waiau Parties will be unable to carry their burden at trial with respect to the tort of bad faith.

In addition, as with its opposition to the General Star MSJ, the Waiau Parties sought an HRCP Rule 56(f) continuance to conduct discovery regarding NACIC's evaluation of the Waiau Parties' claims in the underlying suit and NACIC's communications with First Insurance and/or General Star in order to demonstrate that NACIC acquiesced to First Insurance's bad faith denial of coverage, and ratified the bad faith interpretation of First Insurance's policy. Again applying HRCP Rule 56(f) with a spirit

of liberality here, we conclude that the Waiau Parties should have been granted a continuance to complete discovery related to its bad faith claims, including whether NACIC unreasonably interpreted its policy or otherwise acted in bad faith.

Accordingly, except as otherwise stated above, we conclude that the Circuit Court erred in granting summary judgment in favor of NACIC.

V.    CONCLUSION

For the reasons stated above, the Circuit Court's September 3, 2020 Amended Rule 54(b) Judgment is vacated.  The September 5, 2019 General Star SJ Order and the September 5, 2019 NACIC SJ Order are affirmed in part and vacated in part.  This case is remanded to the Circuit Court for further proceedings consistent with this Opinion.

DATED: Honolulu, Hawaiʻi, December 31, 2024.

On the briefs:                          /s/ Katherine G. Leonard
                                        Acting Chief Judge
Laurent J. Remillard, Jr.,
Don V. Huynh,                           /s/ Clyde J. Wadsworth
Rechelle A.M. Barbour                   Associate Judge
(Remillard & Huynh),
Robert P. Marx, and                     /s/ Karen T. Nakasone
Ronald G. Self,                         Associate Judge
for Plaintiffs-Appellants.

Stephen K. Roy and
Lance S. Au
(Roy & Au),
for Defendant-Appellee
FIRST INSURANCE COMPANY OF HAWAII, LTD.

Richard B. Miller and
David R. Harada-Stone
(Tom Petrus & Miller LLLC)
for Defendant-Appellee
NORTH AMERICAN CAPACITY INSURANCE COMPANY.

Gary G. Grimmer
Ann Correa
(Gary G. Grimmer & Associates), and
Sean M. Hanifin (*pro hac vice*)
(Dykema Gossett, PLLC)
for Defendant-Appellee
GENERAL STAR INDEMNITY COMPANY.